IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HEMP INDUSTRIES ASSOCIATION; and RE BOTANICALS, INC.<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES DRUG ENFORCEMENT ADMINISTRATION and TIMOTHY SHEA, in his Official Capacity,<br><br>    Defendants. | Case No. 1:20-cv-2921 (JEB) |

**PLAINTIFFS' EMERGENCY MOTION FOR EXPEDITED DISCOVERY**

**I.      Introduction**

This action arises out of the meaning of amendments made to the Controlled Substances Act ("CSA") by the 2018 Farm Bill to legalize hemp production, as well as recent remarks DEA made interpreting those amendments.

In cryptic remarks (both pre- and post-dating the filing of this lawsuit), DEA has suggested that two necessary, inevitable, and temporary byproducts of hemp production—intermediate hemp material ("IHM") and waste hemp material ("WHM")—are illegal substances because they exceed the statutory 0.3% delta-9 THC limit applicable to the hemp plant.  This interpretation criminalizes the production of hemp extracts and derivatives, contrary to the intent of Congress—an intent that, since the filing of this lawsuit, has been reaffirmed in letters written by the members of Congress who drafted the 2018 Farm Bill.  *See* Declaration of David Kramer ("Kramer Decl."), Exs. C and D.

Plaintiffs—a member association that represents approximately 1,050 member-hemp businesses and a private South Carolina company that manufactures and sells consumer products derived from hemp—filed this action seeking declaratory and injunctive relief to confirm that the

hemp industry is operating within the law and that producing IHM and WHM during the production of hemp derivatives is not a criminal act.

In this Motion, Plaintiffs seek narrowly tailored expedited discovery. Specifically, Plaintiffs request the Court order DEA to answer two interrogatories (attached as **Exhibit A** to the Kramer Decl.), regarding the legality of certain hemp-derived constituents.  The sole purpose of this expedited discovery is to clarify DEA's interpretation, sharpen the dispute, and guide whether Plaintiffs should file for a preliminary injunction or instead dismiss this case for lack of a case or controversy.

Plaintiffs seek responses by November 13, 2020 or as soon as this Court deems proper.

## II.     Procedural Overview

On August 21, 2020, DEA published an Interim Final Rule titled *Implementation of the Agriculture Improvement Act of 2018* (85 Fed. Reg. 51,639) (the "IFR") purporting to implement changes made to the CSA by the Agriculture Improvement Act of 2018, Pub. L. 115-334, 132 Stat. 4490 (Dec. 20, 2018) (the "2018 Farm Bill").  Kramer Decl. Ex. B.  The IFR was not subject to notice-and-comment or submitted to the Office of Information and Regulatory Affairs for review.

On September 18, 2020, Plaintiffs filed a Petition for Review (the "Petition") in the Court of Appeals for the District of Columbia Circuit challenging the legality of the IFR pursuant to § 877 of the CSA (21 U.S.C. § 877) and §§ 702, 706 of the Administrative Procedure Act (5 U.S.C. §§ 702, 706).  *Hemp Indus. Ass'n v. Drug Enf't Admin.*, No. 20-1376 (D.C. Cir.), Document No. 1862824 (Sept. 18, 2020).  The Petition alleges that the DEA's Acting Administrator promulgated the IFR without observing procedures required by law; the Acting Administrator lacks statutory authority to promulgate the IFR; and the IFR is not in accordance with the 2018 Farm Bill.  *Id.*

On October 12, 2020, Plaintiffs filed the instant complaint in this Court.  Unlike the Petition, which asks the Court of Appeals to hold unlawful and set aside the IFR, the complaint

seeks declaratory relief of non-criminal liability under the CSA as to IHM and WHM (*see* ECF No. 1 at ¶¶ 85-102), and that DEA lacks independent authority under the 2018 Farm Bill to regulate hemp production, including IHM and WHM (*id.* at ¶¶ 103-110).  The complaint also seeks injunctive relief enjoining DEA from enforcing the CSA as to IHM and WHM (*id.* at ¶ 113) and from promulgating rules relating to hemp production, because Congress delegated regulatory authority over hemp production to the Secretary of the United States Department of Agriculture ("USDA"), not DEA or its Acting Administrator (*id.* at ¶ 114).

Because the foregoing declaratory and injunctive relief as to the CSA and 2018 Farm Bill would obviate the need to challenge the IFR, Plaintiffs filed an unopposed motion to hold the Petition in abeyance until this Court renders an appealable decision.  On October 21, 2020, the Court of Appeals granted that motion.  *See* Kramer Decl. Ex. F.

### III. Background

**The 2018 Farm Bill.**  Congress enacted the 2018 Farm Bill to legalize the production of hemp and hemp derivatives.  To legalize the production of hemp and hemp derivatives, the statute did three key things.

*First*, the 2018 Farm Bill expanded the definition of hemp in Section 7606 of the Agricultural Act of 2014 (the "2014 Farm Bill") to include hemp derivatives.  The 2014 Farm Bill, which provided for a more limited legalization of hemp cultivation and research, defined hemp as:

> the plant Cannabis sativa L. and any part of such plant, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis" (emphasis added)—under certain conditions.

7 U.S.C. § 5940.[1]  In contrast, the 2018 Farm Bill contains a broader legalization of hemp cultivation and production, and defines hemp as including "all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers."  Post-2018 Farm Bill, hemp is now defined as:

> the plant Cannabis sativa L. and any part of that plant, **including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers**, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis.

7 U.S.C. § 1639o.

*Second*, in a section entitled "Conforming Changes to Controlled Substances Act," 132 Stat. 5018, the 2018 Farm Bill carved hemp out of the CSA's definition of marijuana and tetrahydrocannabinols, two substances listed in Schedule I and whose unlicensed manufacture, distribution, and possession carry criminal penalties.  *See* 21 U.S.C. §§ 841-844.  Post-2018 Farm Bill, the CSA now reads that marijuana "does not include…hemp, as defined in [7 U.S.C. § 1639o]," 21 U.S.C. § 802(16)(B), and excludes from Schedule I "tetrahydrocannabinols in hemp (as defined under Section 1639o of title 7)."  *Id.* § 812(c), (c)(17).

*Third*, the 2018 Farm Bill delegates exclusive regulatory authority over hemp production to the USDA, 7 U.S.C. § 1639r(b), with one exception for the Commissioner of Food and Drugs and the Secretary of Health and Human Services, *id.* § 1639r(c)(3).  The 2018 Farm Bill charges the Secretary of USDA with administering hemp production.  For example, the Secretary is charged with coming up with a procedure for the effective disposal of Cannabis sativa L. plants produced in violation of its provisions.  *Id.* §1639q(2)(C).

In the entire 2018 Farm Bill, DEA is not mentioned once. And the statute DEA administers—the CSA—is mentioned only to remove hemp from its purview.

---

[1] Although the 2014 Farm Bill defines the hemp plant as "industrial hemp" and the 2018 Farm Bill defines the plant as "hemp," these terms can be, and are, used interchangeably.

**DEA's IFR and IHM/WHM**.  The IFR purports to "merely conform[ ] DEA's regulations to the statutory amendments to the CSA that have already taken effect [through the 2018 Farm Bill]."  Kramer Decl. Ex. B at 51,639.  The IFR recognizes that due to the 2018 Farm Bill, the term "marihuana" under the CSA no longer includes hemp, as defined in § 1639o.  *Id.* at 51,640.  However, the explanatory text of the IFR also says, "a cannabis derivative, extract, or product that exceeds the 0.3% Δ9-THC limit is a schedule I controlled substance, *even if the plant from which it was derived contained 0.3% or less Δ9-THC on a dry weight basis*."  *Id.* at 51,641 (emphasis added).

IHM and WHM are inevitable byproducts of the hemp production process.  If, as DEA says, any cannabis-derived product that exceeds 0.3% delta-9 THC limit is Schedule I controlled, then according to DEA, an essential intermediate step in the production of hemp derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers is still criminalized.  Such an interpretation effectively reschedules hemp derivatives and extracts and would be a radical departure from the text and intent of the hemp amendments in the 2018 Farm Bill, the purpose of which was to remove hemp production from DEA's purview by removing hemp and "[THC] in hemp" from the CSA.

**Industry and Congressional Reaction.**  DEA received 3,348 comments in response to the IFR.  Kramer Decl. ¶ 6.  While it is impossible to reproduce them all here, a significant number are directed at DEA's unclear statements regarding, and the potential criminalization of, IHM and WHM.

Notably, members of congress that sponsored or worked on the 2018 Farm Bill have chimed in.  They, too, share similar concerns about DEA's statements.

In a letter dated October 22, 2020, Senators Wyden and Merkley, authors of the 2018 Farm Bill, explain that Congress "deliberately crafted the law to establish the right regulatory framework to grow and support hemp production" and that the amendments to the CSA sought to remove hemp production "from the purview of the DEA and placed the sole authority to promulgate federal regulation and guidelines that relate to the production of hemp, which includes its derivatives, extracts, and cannabinoids, with the Secretary of Agriculture." DEA's apparent interpretation of the 2018 Farm Bill "criminalizes the intermediate steps of hemp processing, which is wholly inconsistent with Congress's clearly stated purpose and the text of the 2018 Farm Bill." Ex. C (10/22/20 Ltr. from Wyden and Merkley to Shea).

Similarly, in a letter dated October 20, 2020, nine Members of the House write, the 2018 Farm Bill "legalized hemp and its derivatives, extracts, and cannabinoids so long as they contain less than 0.3% Δ9-THC on a dry weight basis"; that "[t]his monumental legislation opened the door for states to develop hemp programs and create a new industry for our constituents during a time when many traditional jobs were being lost due to automation, overseas job flight, and a down job market"; and because "the Farm Bill legalized hemp along with hemp derivatives, extracts and cannabinoids, it logically follows that the only viable methods for processing hemp into those derivatives, extracts, and cannabinoids would also be legal." The Members express concern that the "IFR centers around language therein that could be interpreted to make the process of extracting hemp into derivatives, extracts, and cannabinoids illegal according to the DEA." Ex. D (10/20/20 Ltr. from Joyce et al. to Shea).

**DEA's Non-Response.** In light of these developments, DEA must be aware of the confusion by the explanatory text of the IFR. But since issuing the IFR, DEA has done little to clear up the confusion and has not provided any clarification or assurance to the hemp industry

regarding the legality of the hemp production process.  On the contrary, the few statements DEA has made have only heightened confusion.

DEA's recent statement to *Hemp Grower* on or around October 21, 2020 is a good example.  *Id.* Ex. E.  Addressing the issue of DEA's role in regulating products derived from the hemp plant, DEA's spokesman Michael D. Miller explained:

> The Farm Bill exempted any product derived from a Cannabis sativa L. plant with a delta-9 THC content of less than 0.3% by dry weight basis. Therefore, products that do not meet that definition as stated in the Farm Bill remain controlled by the CSA.

What does DEA mean by this statement?  Grammatically, it can be read two ways, depending on what the phrase "with a delta-9 THC content of less than 0.3% by dry weight basis" modifies.  Does "with a delta-9 THC content of less than 0.3% by dry weight basis" modify "Cannabis sativa L. plant" or "any product derived from a Cannabis sativa L. plant"?

If the phrase "with a delta-9 THC content of less than 0.3% by dry weight basis" modifies only the closest antecedent, "Cannabis sativa L. plant," then DEA's position is that any product derived from a hemp plant, which hemp plant has less than delta-9 THC content of less than 0.3% by dry weight basis, is exempted by the 2018 Farm Bill.  In other words, any product derived from a hemp plant is not controlled by the CSA.  Because IHM and WHM are derived from hemp, they would not fall within the CSA under DEA's interpretation.  If so, there is no case or controversy, Plaintiffs can dismiss this case, and the Parties (and the Court) would be spared any further time and resources related to this matter.

But if the phrase "with a delta-9 THC content of less than 0.3% by dry weight basis" modifies the phrase "product derived from a Cannabis sativa L. plant," then there is a live case or controversy, because IHM and WHM are "product[s] derived from a Cannabis sativa L. plant" but which (necessarily and temporarily) exceed the 0.3% delta-THC limit.

This divide presents the heart of this case and the reason for this Motion. In one light, it is possible, based on DEA's recent statements, that there is no disagreement among the Parties. For this reason, Plaintiffs have not yet filed for a preliminary injunction, which would needlessly burden the Court. In another light, if DEA contends that IHM and WHM are criminalized, then Plaintiffs will ask this Court for a preliminary injunction because of potential irreparable harm.

By DEA answering the following two interrogatories, we can know where we stand—i.e., whether there is a case or controversy that might merit preliminary injunctive relief, or if this case can be dismissed because DEA does not interpret the 2018 Farm Bill as criminalizing necessary steps of the hemp production process:

- Is any Product derived from Hemp controlled by the CSA, assuming the delta-9 THC concentration of said Hemp does not exceed 0.3% on a dry weight basis at the time it is harvested? If so, explain the basis for your contention.

- During the Hemp production process, are in-process materials that exceed a delta-9 THC concentration of 0.3% on a dry weight basis (such as IHM) controlled substances under the CSA? If so, explain the basis for your contention. This interrogatory assumes that the Hemp processor does not hold any registration issued by DEA.

DEA has indicated that instead of propounding the above interrogatories, Plaintiffs should voice their concerns by first submitting public comments to DEA (which Plaintiffs have already done) and then awaiting DEA's final rulemaking regarding the IFR. But DEA has stated that it is unable to provide any timeline as to when it will issue a final rule regarding the IFR (*see* Kramer Decl. ¶ 9), which is troublesome given that the Agency has historically taken years—and, most recently, more than a decade—to issue final rules (*see id.* ¶ 10). Putting aside the fact that the complaint is not challenging the IFR, and that Plaintiffs' requested relief is thus not tied to the outcome of DEA's final rulemaking, Plaintiffs should not, and cannot, be forced to wait indefinitely for basic regulatory clarity regarding essential steps of the hemp production process.

**Argument**

In considering a request for expedited discovery, courts in this District consider the following circumstances: (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made. *Attkisson v. Holder*, 113 F. Supp. 3d 156, 162 (D.D.C. 2015). Courts are not limited to these factors, however; they only provide "guidelines for the exercise of the Court's discretion." *Id.* (quoting *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97-98 (D.D.C. 2014)).

The first four factors weigh in favor of the narrowly tailored expedited discovery Plaintiffs seek.

*First*, while a preliminary injunction is not pending, Plaintiffs request preliminary injunctive relief in the Complaint because, not surprisingly, until recent DEA statements, Plaintiffs were about to file for a preliminary injunction. The requested interrogatories go to the heart of whether that filing is necessary. If it is, then the interrogatories will assist the Court in sharpening the dispute. If it is not, then the interrogatories will assist the Court in clearing its docket.

*Second*, Plaintiffs' expedited discovery is narrow. Plaintiffs seek no documents. In just two interrogatories, Plaintiffs seek to discover DEA's basic but critical contention on the core issue—what does it contend the 2018 Farm Bill means generally and as applied to IHM and WHM specifically.

*Third*, the purpose of these expedited interrogatories is to clear up the confusion caused by DEA's vague and ambiguous statements that provoked this lawsuit and to determine if it should continue. It would be a waste of judicial resources for Plaintiffs to file for and brief a preliminary

injunction only to find out that DEA does not interpret the statute in a way that presents conflict or in a way that exposes Plaintiffs to criminal liability.

*Fourth*, the burden on DEA to comply with the expedited request is minimal.  Answering just two interrogatories is, on its face, not too burdensome.  Given DEA's public statements, DEA presumably knows the answer or, at minimum, has thought about the underlying issue.

Beyond the traditional factors, two other factors weigh in favor of limited, expedited discovery.

*First*, the public interest weighs heavily in favor of the proposed expedited discovery.  As scores of public comments and the two letters from Congress reflect, the public is concerned about this issue and is looking for a decisive answer to the question of whether DEA contends that IHM and WHM fall within the bounds of the CSA and are therefore Schedule I controlled substances.  Rightly so, given the criminal penalties and the billion-dollar implications that emanate from the answer.

*Second*, judicial efficiency would be promoted by granting expedited discovery.

**IV.   Conclusion**

For the reasons stated herein, the Motion should be granted and DEA should be ordered to answer the interrogatories attached as **Exhibit A** to the Kramer Decl. no later than November 13, 2020, or as soon as this Court deems is proper.

Dated:  November 2, 2020

                              Respectfully submitted,

                              By: */s/ David Kramer*
                                  David C. Kramer, Esq. (Bar ID CA00069)
                                VICENTE SEDERBERG LLP
                                633 West 5th Street, 26th Floor

Los Angeles, CA 90071
Telephone: (303) 860-4501
Email:   d.kramer@vicentesederberg.com

Shawn Hauser, Esq. (admitted pro hac vice)
Michelle Bodian, Esq. (admitted pro hac vice)
VICENTE SEDERBERG LLP
455 Sherman Street, Suite 390
Denver, CO 80203
Telephone: (303) 860-4501
Emails:   shawn@vicentesederberg.com
            m.bodian@vicentesederberg.com


Rod Kight, Esq.† (admitted pro hac vice)
KIGHT LAW OFFICE PC
84 West Walnut Street, Suite 201
Asheville, NC 28801
Telephone: (828) 255-9881
Email:   rod@kightlaw.com

Robert Hoban, Esq.† (admitted pro hac vice)
Garrett Graff, Esq.*†
HOBAN LAW GROUP
730 17th Street, Suite 420
Denver, CO 80202
Telephone: (844) 708-7087
Emails: bob@hoban.law
         garrett@hoban.law

Patrick D. Goggin, Esq.*†
HOBAN LAW GROUP
870 Market Street, Suite 1148
San Francisco, CA 94102
Telephone: (844) 708-7087
Email:   patrick@hoban.law


*Attorneys for Plaintiffs*

*\*Application for admission pro hac vice to be submitted*

*†Counsel for Plaintiff RE Botanicals, Inc. only*