IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| HEMP INDUSTRIES ASSOCIATION, and RE BOTANICALS, INC., <br><br>*Plaintiffs*, <br><br>v. <br><br>U.S. DRUG ENFORCEMENT ADMINISTRATION, and TIMOTHY SHEA, in his official capacity as Acting DEA Administrator, <br><br>*Defendants*. | Case No. 1:20-cv-02921-JEB |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR EXPEDITED DISCOVERY**

Discovery of any sort is inappropriate in this case; expedited discovery all the more so. First and foremost, Congress has directed that challenges to Drug Enforcement Administration (DEA) final actions like this one, however framed, proceed directly in the Court of Appeals: this Court lacks jurisdiction to hear the case *at all*, and so discovery is plainly unavailable. Second, even if jurisdiction in this Court were proper, the case would proceed on an administrative record, without discovery.

Even setting all that aside, the expedited discovery Plaintiffs demand is unwarranted, as Plaintiffs do not seek factual information at all but instead seek a preview of DEA's legal arguments and DEA's views on how it will regulate hypothetical factual scenarios. Interrogatories seeking a party's views on the application of law to a hypothetical set of facts are generally inappropriate, and in any event contention interrogatories of any sort are better suited to the end of the discovery—not before Defendants have even answered. Moreover, requiring Defendants to answer Plaintiffs' proposed interrogatories would upset the administrative and policymaking process that DEA adheres to in issuing new regulations or policy guidance.

## BACKGROUND

In 2018 Congress passed and the President signed the Agriculture Improvement Act of 2018 (AIA). Among many other things, the AIA defined "hemp":

> The term 'hemp' means the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol [delta-9 THC] concentration of not more than 0.3 percent on a dry weight basis.

7 U.S.C. § 1639*o*. The AIA also amended the Controlled Substances Act (CSA) in two relevant ways. First, the AIA changed the definition for "marihuana" so that the "term 'marihuana' does not include hemp, as defined in [the AIA]." *See* 21 U.S.C. § 802(16)(B). Second, the AIA amended Schedule I of the CSA, which identifies the most strictly controlled substances, so that it included "Tetrahydrocannabinols, except for tetrahydrocannabinols in hemp (as defined under [the AIA])." *See* 21 U.S.C. § 812(c)(17). (Tetrahydrocannabinols include delta-9 THC, the principal psychoactive component in the cannabis plant.)

On August 21, 2020, the DEA published an interim final rule (IFR) that conformed DEA's regulations to these new statutory definitions. *Implementation of the Agriculture Improvement Act of 2018*, 85 Fed. Reg. 51,639 (Aug. 21, 2020). The IFR first clarified that "marihuana," which is broadly defined by statute to mean "all parts of the plant Cannabis sativa L." (with some exceptions not relevant here), 21 U.S.C. § 802(16), must now exclude cannabis and cannabis derivatives that "contain[] 0.3% or less of [delta-9 THC] on a dry weight basis," but that "any such material that contains greater than 0.3% of [delta-9 THC] on a dry weight basis remains controlled in schedule I." 85 Fed. Reg. 51,641. Thus, "[c]annabis-derived products that exceed the 0.3% [delta-9 THC] limit do not meet the statutory definition of 'hemp' and are schedule I substances," even if they are "derived from a hemp plant." *Id.*[1]

---

[1] Among other changes, the IFR also made two related amendments to the CFR. First, the regulatory provisions for tetrahydrocannabinols (which otherwise remain Schedule I controlled substances) now exclude "any material, compound, mixture, or preparation that falls within the definition of hemp set forth in [the AIA]." 85 Fed. Reg. 51,641; *see* 21 C.F.R. § 1308.11(d)(31)(ii).

2

A month later, Plaintiffs filed a petition for review of the IFR in the D.C. Circuit. *See Hemp Industries Ass'n, et al. v. DEA, et al.*, No. 20-1376 (D.C. Circuit, filed Sept. 18, 2020). Less than a month after that, Plaintiffs filed this action, which, broadly speaking, challenges DEA's interpretation of the CSA and AIA set out in the IFR. *See* Compl., ECF No. 1 (Oct. 12, 2020). And soon after that, Plaintiffs moved to hold the D.C. Circuit case in abeyance until "an appealable decision is reached" in these district court proceedings. Petitioners' Unopposed Motion to Hold Petition for Review in Abeyance, *Hemp Industries Ass'n*, No. 20-1376 (D.C. Cir. Oct. 20, 2020). The reason for that motion was straightforward: in these district court proceedings, Plaintiffs "seek declaratory relief that involves interpretation of the same hemp-related amendments that the IFR purports to implement," and these proceedings therefore "may affect the outcome of" the D.C. Circuit case. *Id.* at 3.

Plaintiffs then filed a motion for expedited discovery, seeking to serve two interrogatories before Defendants have filed responsive pleading or motion under Rule 12.

## ARGUMENT

This Court should deny Plaintiffs' motion for expedited discovery for several reasons. First, the Court lacks jurisdiction, as Congress has provided that all challenges to DEA rulemakings proceed in the courts of appeals. Second, even if jurisdiction in this Court were proper, this challenge should proceed on an Administrative Record only, and Plaintiffs have not identified any basis for supplementing that record—which has not yet even been compiled. Third, Plaintiffs have failed to meet their burden to justify expedited discovery, and the discovery they propose is inappropriate in any event.

---

Second, the definition of "marihuana extract" now reads "an extract containing one or more cannabinoids that has been derived from any plant of the genus Cannabis, containing greater than 0.3% [delta-9 THC] on a dry weight basis, other than the separated resin (whether crude or purified) obtained from the plant." 85 Fed. Reg. 51,641–42, *see* 21 C.F.R. § 1308.11(d)(58).

### I.     This Court lacks jurisdiction over Plaintiffs' claims.[2]

Congress has provided that all "final determinations, findings, and conclusions" of the Attorney General related to drug control "shall be final and conclusive," "*except that* any person aggrieved by a final decision of the Attorney General may obtain review of the decision in the United States Court of Appeals for the District of Columbia" or other appropriate geographic court of appeals.[3]  21 U.S.C. § 877.  As the D.C. Circuit has explained, that provision "vests exclusive jurisdiction in the courts of appeals" over DEA's final determinations applying the CSA.  *Doe v. DEA*, 484 F.3d 561, 568 (D.C. Cir. 2007).  This is why "as a matter of practice," challenges to the DEA's interpretation of the CSA are almost always "filed directly in the court of appeals."  *Id.*  Indeed, Plaintiffs in this case followed that practice: before initiating this action, they first filed a petition for review in the D.C. Circuit.  *See Hemp Industries Ass'n*, No. 20-1376 (D.C. Cir., filed Sept. 18, 2020).

There can be no doubt that this is a challenge to a "final decision" concerning the application of the CSA: Plaintiffs are challenging DEA's August 21, 2020 Interim Final Rule.  The gist of Plaintiffs' Complaint is that they believe the IFR misinterpreted how the AIA and CSA interact, and that their own interpretation is the correct one.  *See* Compl. ¶¶ 79–84.  According to Plaintiffs, the "newly disclosed DEA interpretation of Section 1639*o*" in the IFR "has serious, immediate, and irreparable consequences."  *Id.* ¶ 84.  Plaintiffs accordingly make four claims for relief.  In their First Claim for Relief, Plaintiffs allege that "[t]hrough the explanatory language preceding the text of the IFR, DEA reaches a different conclusion" about the proper interpretation of the two statutes; Plaintiffs seek a declaration that theirs is the correct interpretation.  *Id.* ¶¶ 91, 94.

---

[2] The deadline for Defendants to file a responsive pleading or a motion under Rule 12 is December 29, 2020.  If Defendants file a motion to dismiss under Rule 12(b)(1) and 12(b)(6), they will fully brief this jurisdictional issue, other jurisdictional issues such as standing, and also the merits of Plaintiffs' claims.

[3] The Attorney General has delegated his authority to the Administrator of the DEA.  *See* 28 C.F.R. § 0.100(b).

4

In their Second Claim for Relief, Plaintiffs allege that "[t]he IFR narrows the scope of the [AIA] and improperly criminalizes THC in hemp"; Plaintiffs seek a declaration that theirs is the proper interpretation. *Id.* ¶¶ 100, 102. In their Third Claim for Relief, Plaintiffs allege that "the IFR is an 'attempted exercise of power that had been specifically withheld'"; Plaintiffs seek a declaration that DEA lacks authority regulate certain products. *Id.* ¶¶ 108, 110 (citation omitted). Finally, in their Fourth Claim for Relief, Plaintiffs seek "an injunction enjoining the IFR and enjoining DEA from promulgating rules that relate to the production of hemp." *Id.* ¶ 114.

That should be the end of the matter: Plaintiffs are "aggrieved by" the DEA's "final decision" reflected in the IFR, and the courts of appeals therefore have exclusive jurisdiction. *See Doe*, 484 F.3d at 568. Plaintiffs have a pending petition for review in the D.C. Circuit, and they should seek resolution of their contentions there.

But Plaintiffs evidently believe they may escape the strictures of § 877 by reframing their challenge to the IFR as a declaratory judgment action whose claims "arise under" the CSA. *See* Pls.' Mot. at 2–3; Compl. ¶¶ 8–11 (citing 28 U.S.C §§ 1331, 2201).[4] But § 877 does not permit such an end-run. *See Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994) (holding that a statute channeling review to the courts of appeals "precludes district court jurisdiction over the pre-enforcement challenge" at issue). Allowing Plaintiffs to bring what is plainly a challenge to the DEA's IFR in district court on some alternative theory or by artful pleading would defy Congress's directive in § 877 and would "encourage[] forum shopping and encourage[] dissatisfied claimants to 'jump the gun' by going directly to district court to develop their cases instead of exhausting their

---

[4] Plaintiffs also cite 28 U.S.C. § 1343. That provision provides for original jurisdiction in certain civil rights actions and has no apparent relevance to this suit. Plaintiffs also cite *Leedom v. Kyne*, 358 U.S. 184, 189 (1958). But so-called *Leedom* jurisdiction is appropriate only in extraordinary circumstances plainly not present here. *See, e.g., Nyunt v. Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009). Most obviously, *Leedom* jurisdiction is available only where "there is no alternative procedure for review of the statutory claim." *Id.* Plaintiffs have such an alternative: the petition for review they have already filed in the Court of Appeals. 21 U.S.C. § 877.

5

administrative remedies before the agency." *Doe*, 484 F.3d at 570.  It would lead to "duplicative" review and accompanying delays.  *Id.*  Indeed, and again, *in this very case*, Plaintiffs have a pending petition for review in the D.C. Circuit which is now *held in abeyance* pending resolution of this district court action.  See Order, *Hemp Industries Ass'n v. DEA*, No. 20-1376 (D.C. Cir. Oct. 21, 2020).

Plaintiffs' suggestion that obtaining the declaratory and injunctive relief they seek in these proceedings will "obviate the need to challenge the IFR," Pls.' Mot. at 3, gives the game away: they seek the same functional relief from this Court that they do in the D.C. Circuit—invalidation of and relief from the IFR.  Indeed, even assuming Plaintiffs could clear all the obstacles between them and a declaratory judgment from this Court, the obvious close relationship between these proceedings and Plaintiffs' pending proceedings in the Court of Appeals, together with Congress's clear intention to channel challenges to DEA's interpretations of the CSA to the courts of appeal, practically demand that this Court exercise its discretion to *decline* to issue a declaratory judgment.  *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007).

Still more fundamentally, Plaintiffs' attempt betrays a misapprehension of the relevant law.  The Declaratory Judgment Act "does not . . . provide a stand-alone cause of action; it only authorizes a form of relief."  *Mohamed v. Select Portfolio Servicing, Inc.*, 215 F. Supp. 3d 85, 97 (D.D.C. 2016) (Boasberg, J.) (citing *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011)).  Plaintiffs have pled no separate cause of action; nor have they identified one in their motion.  The only plausible cause of action is the Administrative Procedure Act, but, as the D.C. Circuit explained in *Doe*, essentially everything that satisfies the requirement for "final agency action" under the APA will also be a "final determination[]" under § 877, and thus the exclusive purview of the courts of appeals.  *See* 484 F.3d at 568–70 (rejecting district court cases that found "some play in the joints between 'agency action' under the APA and DEA 'determinations, findings, and conclusions under 21 U.S.C. § 877," *id.* at 568); *see also Woods v. DEA,* 283 F. Supp. 3d 649, 660 (W.D. Tenn. 2017) (holding there is "no gap"

6

between "final agency action" under the APA and "final determinations, findings, and conclusions" under § 877).

To be sure, courts have sometimes found certain challenges to DEA actions may proceed in the district courts. Thus, in *Novelty Distributors, Inc. v. Leonhart*, the district court understood 21 U.S.C. § 824(d) to authorize jurisdiction to enter a preliminary injunction against a pre-hearing suspension. 562 F. Supp. 2d 20, 28 (D.D.C. 2008). But that statutory provision, which provides that a non-final pre-hearing suspension will remain in place "unless sooner withdrawn by the Attorney General *or dissolved by a court of competent jurisdiction*," 5 U.S.C. § 824(d) (emphasis added), is not at issue here. And in *Monson v. DEA*, the Eighth Circuit concluded that the district court had jurisdiction to enter declaratory relief that the plaintiff's proposed conduct was lawful because the plaintiff was not challenging agency action. *See* 589 F.3d 952, 961 (8th Cir. 2009). That decision is difficult to reconcile with the D.C. Circuit's decision in *Doe*, and relies on district court decisions that *Doe* expressly rejected. *Compare Monson*, 589 F.3d at 960 (citing, among others, *PDK Labs Inc. v. Reno*, 134 F. Supp. 2d, 24, 29 (D.D.C. 2001) and *Novelty, Inc. v. Tandy*, 2006 WL 2375485, at *7 (S.D. Ind. Aug. 15, 2006)), *with Doe*, 484 F.3d at 569 (rejecting the reasoning of *PDK Labs* and *Novelty, Inc.*). But in any event *Monson* is inapposite here: as is apparent from Plaintiffs' Complaint, Plaintiffs are in fact challenging the DEA's interpretation of the AIA and CSA set forth in the IFR.

If Plaintiffs instead contend that there is *not* final agency action, and that some other statute gives them a cause of action, then this action is not ripe for review, and Plaintiffs do not have "an injury-in-fact that is 'imminent' or 'certainly impending'" sufficient to confer standing. *See POET Biorefining, LLC v. EPA*, 970 F.3d 392, 403 (D.C. Cir. 2020) (quoting *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 386 (D.C. Cir. 2012)); *see also e.g., Hi-Tech Pharm., Inc. v. Hahn*, 2020 WL 3498588, at *4 (D.D.C. June 29, 2020) ("Although both the fitness and hardship prongs [of the ripeness inquiry] encompass a number of considerations, a dispute is not ripe if it is not fit, and (at least in an APA case) it is not fit if it does not involve final agency action." (citing *Holistic Candlers & Consumers Ass'n*

*v. FDA*, 664 F.3d 940, 946 n.4 (D.C. Cir. 2012))). If Plaintiffs do indeed pursue such a theory, this would be a pre-enforcement challenge to enforcement of hypothetical regulations that (in Plaintiffs' telling) DEA has not yet promulgated. *Cf. Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967) (permitting pre-enforcement challenge because FDA's "final" regulations "require[d] an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance," thus putting them "in a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate," *id.* at 152–53). Indeed, Plaintiffs have suggested that they seek discovery in order to force DEA to develop a policy on a particular issue, at which point Plaintiffs will then know whether this (not yet formed) policy offends them. *See* Pls.' Mot. at 8. A plaintiff cannot use the discovery process to create the case or controversy he wishes to litigate.

In sum, Plaintiffs are either challenging the IFR, in which case their challenge must proceed in one of the courts of appeals, or else they are challenging only a hypothetical regulation or policy, in which case their claims are not ripe for judicial review.

## II.   Discovery is inappropriate in a challenge to agency action.

This Court lacks jurisdiction to hear this challenge to agency action. But even if jurisdiction were proper, a challenge to agency action proceeds on the basis of the administrative record; discovery is appropriate only in exceptional circumstances. The IFR is the result of DEA's administrative process. Plaintiffs contend the IFR contradicts the AIA. In deciding whether the IFR is in fact "not in accordance with law," 5 U.S.C. § 706(2)(A), the Court "shall review the whole record," *id.* § 706. As has been clear for almost fifty years, the Court's review should therefore be limited to "the full administrative record that was before the [Administrator] at the time he made his decision." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). Indeed, for that reason, cases like this one which proceed on an administrative record are exempt from a Rule 26(f) conference all together. *See* Fed R. Civ. P. 26(a)(1)(B)(i); 26(f)(1). True, a "party may supplement an administrative record," but only in "one of four 'highly exceptional[] circumstances.'" *Bellion Spirits,*

*LLC v. United States*, 335 F. Supp. 3d 32, 39 (D.D.C. 2018) (quoting *Cape Hatteras Access Preservation Alliance v. Dep't of Interior*, 667 F. Supp. 2d 111, 114–15 (D.D.C. 2009)).  Plaintiffs have asserted no exception that applies here.  And Defendants are not aware of—and Plaintiffs have not supported—any separate exception for Plaintiffs' highly unusual interrogatories—which ask how DEA will apply the law to a hypothetical set of facts.

### III.     Plaintiffs have not met their burden to justify early discovery.

"[E]xpedited discovery is not the norm."  *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97 (D.D.C. 2014).  Courts considering expedited discovery requests often apply a "reasonableness approach," considering a number of factors, such as: (1) whether a preliminary injunction motion is pending; (2) the breadth of the discovery requests; (3) the purpose of the discovery requests; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made.  *See id.* at 98.

Plaintiffs' threadbare justification for discovery before the Defendants have even answered the Complaint does not warrant departing from the ordinary timing of discovery.  Plaintiffs do not have a preliminary injunction motion pending, although they suggest their purpose in seeking expedited discovery is to help them decide whether to file such a motion.  Pls.' Mot. at 9.  But the purpose of their proposed discovery is not to obtain factual evidence to support a pending or contemplated motion for a preliminary injunction; rather, it is to create the conflict that would (in Plaintiffs' view) necessitate one.  Their strategy turns the normal mechanism for obtaining preliminary relief entirely upside down.

Setting aside that discovery is not warranted at all here, Plaintiffs are mistaken in describing their proposed discovery requests as "narrow" and imposing a "minimal" burden.  Pls.' Mot. at 9–10.  As courts—and indeed the Federal Rules of Civil Procedure themselves—have long recognized, contention interrogatories are rarely appropriate early in the discovery process.  *See* Fed. R. Civ. P. 33(a)(2) (authorizing court to order delayed response to contention interrogatories); *English v.*

9

*Washington Metro. Area Transit Auth.*, 323 F.R.D. 1, 19 (D.D.C. 2017) ("[T]he obligation to respond [to contention interrogatories] is often deferred 'until near the end of the discovery period unless the proponent carries its burden of demonstrating why they are necessary earlier on.'" (quoting *Everett v. USAir Grp., Inc.*, 165 F.R.D. 1, 3 (D.D.C. 1995)); *Grouse River Outfitters Ltd. v. Netsuite, Inc.*, 2017 WL 1330202, at *2 (N.D. Cal. Apr. 6, 2017) ("[A]n attempt to justify early use of contention interrogatories on the ground that answers would clarify the issues would not be especially persuasive." (quoting *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 337 (N.D. Cal. 1985)).  Instead, "early discovery should focus on generating real world data and not on examining the parties' contentions about the legal implications of that data." *Convergent Techs.*, 108 F.R.D. at 338.  By proceeding in that way, parties avoid the burden of answering interrogatories about hypothetical circumstances that may not be borne out by the facts. *See, e.g.*, *Kendrick v. Sullivan,* 125 F.R.D. 1, 4 (D.D.C. 1989) (noting that hypothetical legal questions and discovery as to legal arguments are impermissible).

True, Plaintiffs do not seek documents or depositions.  But what Plaintiffs do seek is to force DEA to engage its policymaking apparatus on an artificially compressed schedule to clarify what Plaintiffs perceive as an ambiguity in the law.  DEA promulgates policy in many ways.  One is through rulemaking, as in the IFR at issue here.  DEA rulemaking often involves policy experts from across the agency, lawyers within DEA, lawyers outside DEA, and policymakers outside DEA (at the Office of Management and Budget, for example).  A second way DEA develops and publishes policy is through guidance documents, which are published on the DEA website.  Policy guidance documents are also subject to extensive procedures to ensure the guidance accurately reflects the agency's best view of appropriate policy and the law.  Among other restrictions, guidance documents must comply with the requirements set out in Executive Order 13891.

DEA is not required to explain how the IFR applies to every hypothetical circumstance.  But, even if DEA were to provide some further explanation relevant to Plaintiffs' concerns, DEA

does not typically decide and promulgate policy in response to discovery requests. As Plaintiffs recognize, DEA has "limited resources of time and tax dollars" and must devote those resources to multiple "ongoing and severe issues." Comment of Hemp Industries Ass'n on DEA Interim Final Rule at 4 (Sept. 18, 2020), https://downloads.regulations.gov/DEA-2020-0023-2389/attachment_1.pdf. Plaintiffs have submitted comments on the IFR, and DEA will review and respond to those comments in due course. DEA may (or may not) issue guidance relevant to Plaintiffs' concerns in the interim. But it is never appropriate for a private party who pays a filing fee and threatens a preliminary injunction motion to hijack an agency's policymaking process to receive expedited consideration of their own concerns.

Considering the circumstances of this case, Plaintiffs' proposed expedited discovery is not reasonable and the Court should not permit it.

## CONCLUSION

Defendants share Plaintiffs' concern for judicial efficiency. Plaintiffs' misguided effort to obtain discovery does not serve it. The fastest way to resolution of Plaintiffs' contentions is in the Court of Appeals, where their Petition for Review is currently held in abeyance. Because this Court lacks jurisdiction, it should deny Plaintiffs' attempt to serve unreasonably early contention interrogatories in a case that will ultimately proceed (in the Court of Appeals) on the administrative record.

Dated: November 16, 2020

Respectfully submitted,
JEFFREY B. CLARK
Acting Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director
Federal Programs Branch

/s/ *Michael F. Knapp*
MICHAEL F. KNAPP (Cal. Bar No. 314104)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 514-2071
Fax: (202) 616-8470
Email: michael.f.knapp@usdoj.gov

*Counsel for Defendants*