**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| HEMP INDUSTRIES ASSOCIATION; and<br>RE BOTANICALS, INC. | §<br>§<br>§ | |
| Plaintiffs, | §<br>§ | |
| v. | §<br>§ | Case No. 1:20-cv-02921 (JEB) |
| | §<br>§ | |
| UNITED STATES DRUG ENFORCEMENT<br>ADMINISTRATION and TIMOTHY SHEA,<br>in his Official Capacity, | §<br>§<br>§ | |
| Defendants. | | |

**REPLY IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR EXPEDITED**
**DISCOVERY**

The Government buries its argument that "Plaintiffs have not met their burden to justify early discovery" at the very end of its Opposition. Far more prominent in its brief is the Government's assault on Plaintiffs' lawsuit as a whole. What begins as an attack on Plaintiffs' claims—"the Court lacks jurisdiction to hear the case *at all*"—culminates in a dramatic indictment of Plaintiffs *themselves*, who, by the Government's telling, are bent on "hijack[ing] [the] agency's policymaking process to receive expedited consideration of their own concerns." Opp. at 11.

No doubt, the Government would like this Court to believe that Plaintiffs "bring what is plainly a challenge to the DEA's IFR" and that "discovery is plainly unavailable." According to the Government, since "[t]here can be no doubt that this is a challenge to a 'final decision' concerning the application of the CSA," 21 U.S.C. § 877 divests this Court of "jurisdiction to hear this case *at all*."

These heated attacks on this Court's jurisdiction (and Plaintiffs) seriously mischaracterize Plaintiffs' claims and the nature of this case. Plaintiffs do *not* challenge the IFR and do not seek to "hijack" any "policymaking." Instead, Plaintiffs seek declaratory relief to vindicate a statutory

immunity that Congress enshrined in the 2018 Farm Bill.  That immunity pre-dates the IFR, stands independent of any final agency action, and falls within this Court's jurisdiction to adjudicate. While the IFR is certainly relevant to the case or controversy—it provides facts showing DEA's intention to regulate and enforce the CSA as to intermediate and waste hemp materials—it is neither the subject nor object of Plaintiffs' claims.

Plaintiffs have petitioned for review of the IFR, but, as the Government repeatedly emphasizes, they have done so in an entirely distinct lawsuit that the D.C. Circuit is currently holding in abeyance.  Unlike any of the claims at issue in their Complaint, Plaintiffs' petition for review seeks to have the IFR held unlawful and set aside under the Administrative Procedure Act. By contrast, the question before this Court is straightforward and distinct: "Through this action, Plaintiffs seek a declaratory judgment to reset the lines Congress drew in the 2018 Farm Bill and confirm that the hemp production process does not violate the CSA."  ECF No. 1 at ¶ 7.  In the Government's view, this request for declaratory relief of non-liability under the CSA cannot escape the ambit of 21 U.S.C. § 877.  As discussed below, however, courts across the country that have considered this issue have reached the opposite conclusion.

Given that the core jurisdictional argument advanced by the Government fails, and that the expedited discovery factors weigh in Plaintiffs' favor, the Court should grant Plaintiffs' Motion.

## I.      This Court Has Jurisdiction

The Government's jurisdictional arguments all hinge on a single premise: that Plaintiffs' claims in this case challenge the IFR and that, as such, this Court lacks jurisdiction.  *E.g.* Opp. at 4 (arguing that because Plaintiffs supposedly challenge a final determination of the Attorney General under the CSA, the courts of appeals have exclusive jurisdiction over the claims under 21 U.S.C. § 877).  As we explain, however, the Government's lynchpin premise is wrong.

### A.      Plaintiffs' claims in this case do not challenge the IFR

Plaintiffs' claims in this case do not challenge the IFR.  Plaintiffs do not ask this Court to invalidate the IFR, because invalidating the IFR would not provide the primary relief Plaintiffs seek: an order declaring that (1) intermediate hemp material (IHM) and waste hemp material (WHM) are not controlled substances under the CSA; and (2) the 2018 Farm Bill divested DEA of any authority to regulate hemp production.  *See* ECF No. 1 at ¶¶ 94, 102, and 110.

The Government's arguments to the contrary are meritless.  Specifically, the Government argues that "[t]here can be no doubt that this [case] is a challenge to … DEA's August 21, 2020 Interim Final Rule" because "the gist of Plaintiffs' Complaint is that they believe the IFR misinterpreted how the AIA and CSA interact, and that their own interpretation is the correct one."  Opp. at 3.

There are several problems with this argument.  First, to the extent there is a single "gist" of Plaintiffs' Complaint, that is not it.  Plaintiffs' claims in this case are grounded in DEA's lack of *authority* to act, not any final action of DEA.  Specifically, Plaintiffs allege DEA has no authority to regulate hemp production, including IHM and WHM, because through the 2018 Farm Bill, Congress (1) removed IHM and WHM from the CSA, *see, e.g.*, 21 U.S.C. § 802(16) ("[t]he term 'marihuana' does not include—hemp, as defined in section 1639o…"); and (2) divested DEA of all rulemaking authority over hemp production, *see* 7 U.S.C. § 1639r (granting the Secretary of the USDA "sole authority to promulgate Federal regulations and guidelines that relate to the production of hemp. . . .").  Plaintiffs highlight DEA's incorrect interpretations of the CSA in their Complaint only to demonstrate the necessity and propriety of the relief they seek: a declaration from this Court confirming that the compounds essential to the hemp production process lay beyond DEA's regulatory grasp, as Congress deliberately enshrined in the 2018 Farm Bill.  *See, e.g.*, ECF No. 21-2, Ex. C (letter from Senators Wyden and Merkley affirming that "[t]he 2018

Farm Bill formally removed hemp…from the purview of the DEA" and noting that "the IFR criminalizes the intermediate steps of hemp processing, which is wholly inconsistent with Congress's clearly stated purpose and the text of the 2018 Farm Bill."); *see also id.* at Ex. D (similar letter from nine Members of the United States House of Representatives).

The second problem with the Government's "gist" argument is that the Government never even attempts to explain how its conclusion follows from its premise.  In other words, the Government never explains why Plaintiffs' belief that the IFR misinterprets the interaction between the 2018 Farm Bill and CSA proves that Plaintiffs' claims in this case constitute challenges to the IFR.  Although Plaintiffs disagree with DEA's interpretation of the statute in the IFR, they do not seek to invalidate that interpretation in this case.  Instead, Plaintiffs seek confirmation that, despite DEA's troubling interpretation, Plaintiffs can in fact rely on the plain language of the 2018 Farm Bill, which divests DEA of authority to regulate in this area and renders Plaintiffs immune to DEA's attempted overreach.

In sum, because the Complaint does not challenge the IFR, the Government's foundational argument is a non-starter.[1]

**B.    Case law supports—and certainly does not undermine—this Court's jurisdiction over Plaintiffs' claims**

Next, the Government argues that because "Plaintiffs are 'aggrieved by' the DEA's 'final decision' reflected in the IFR … the courts of appeals [must] have exclusive jurisdiction" over the

---

[1] Several other arguments in the Opposition hinge entirely on the Government's mistaken assumption that Plaintiffs' claims challenge the IFR.  Examples include the Government's arguments that Plaintiffs' claims: (1) will cause forum shopping, duplicative review, and accompanying delay; (2) are duplicative of their petition for review of the IFR that the D.C. Circuit has held in abeyance pending the resolution of this case; and (3) would encourage dissatisfied claimants to "jump the gun" and file similar claims in district court without exhausting administrative remedies.  Similarly, the Government also insists that discovery is inappropriate in cases challenging agency actions.  Each of these arguments rests on the Government's assumption that Plaintiffs' claims challenge the IFR and are therefore subject to 21 U.S.C. § 877.  Because that assumption is wrong, these arguments are, too.

claims they raise in this case.  Opp. at 5 (quoting *John Doe, Inc. v. DEA*, 484 F.3d 561, 568 (D.C. Cir. 2007)).  Putting aside the premise that not everyone aggrieved by one of DEA's final decisions seeks judicial review of that final decision, the fact remains that a party seeking judicial review of a DEA final decision in a court of appeals is not barred from bringing a separate action challenging something other than that final decision.

Accordingly, although the Government is correct that Plaintiffs (1) are aggrieved by the IFR; and (2) have sought judicial review of that final DEA decision in the D.C. Circuit, as 21 U.S.C. § 877 requires, what DEA does not—and cannot—explain is how Plaintiffs' petition for review bears on this Court's authority to adjudicate the distinct claims raised in the Complaint.

The Government acknowledges that "courts have sometimes found certain challenges to DEA actions may proceed in the district courts."  Opp. at 7 (discussing *Novelty Distributors, Inc. v. Leonhart*, 562 F. Supp. 2d 20, 28 (D.D.C. 2008); *Monson v. DEA*, 589 F.3d 952, 961 (8th Cir. 2009); *PDK Labs Inc. v. Reno*, 134 F. Supp. 2d 24, 29 (D.D.C. 2001); *Novelty, Inc. v. Tandy*, 2006 WL 2375485, at *7 (S.D. Ind. Aug. 15, 2006)).  The Government even admits that in *Monson*, "the Eighth Circuit concluded that the district court had jurisdiction to enter declaratory relief that the plaintiff's proposed conduct was lawful because the plaintiff was not challenging agency action." *Monson*, 589 F.3d at 961.  Plaintiffs' first and second claims, which seek declaratory relief confirming the legality of an inevitable part of the hemp production process, are remarkably similar to the claims in *Monson*.

Despite these similarities, the Government insists this Court should not follow *Monson* because "the decision is difficult to reconcile with the D.C. Circuit's decision in *Doe*."  Opp. at 7 (discussing *Doe*, 484 F.3d at 568).  However, the Government never explains why or how it arrives at that conclusion.  To the extent there is some phantom tension between *Monson* and *Doe*, it does

not diminish *Monson*'s authority with respect to the one issue that matters here: § 877 is not an obstacle to a district court's review of a claim that seeks declaratory relief without challenging agency action.  859 F.3d at 961.

Moreover, the Eighth Circuit in *Monson* succinctly explains why *Doe*, though rightly decided based on its particular facts, does not control in a case where—as here—plaintiffs seek a declaration confirming the legality of their hemp business based on a statutory provision instead of challenging a final DEA decision:

> The DEA cites the decision of the District of Columbia Circuit in *John Doe, Inc. v. DEA*, 484 F.3d 561 (D.C. Cir. 2007), in support of its argument that § 877 strips the District Court of subject matter jurisdiction to consider Monson and Hauge's complaint. In *John Doe, Inc.*, the DEA denied an application for registration to import a generic version of a Schedule I controlled substance, and the applicant sought redress in the district court. The district court dismissed the case for lack of subject matter jurisdiction, citing § 877. The District of Columbia Circuit affirmed, holding that the DEA's denial of the registration application was "final" for purposes of § 877 and that the sole avenue for judicial review was through the courts of appeals. 484 F.3d at 570. *Unlike the applicant in John Doe, Inc., however, Monson and Hauge did not file their complaint in the District Court seeking review of a final action by the DEA under the CSA. Instead, Monson and Hauge seek a declaration that they cannot be criminally prosecuted for cultivating industrial hemp pursuant to their state-issued licenses.*
>
> We are not convinced that § 877 precluded the District Court from assuming jurisdiction over the action. There was *no final decision of the DEA to be reviewed* and the crux of Monson and Hauge's action is a *challenge to the applicability of the CSA to their proposed activities and the authority of the DEA under the CSA to regulate those activities in the first instance.* In these circumstances and on this record, we conclude that the District Court had jurisdiction to consider the claims for declaratory relief raised by Monson and Hauge.

*Monson*, 589 F.3d at 960-61 (emphasis added).

The Government's only other criticism of *Monson*—that *Monson* "relies on district court decisions that *Doe* expressly rejected"—fails for similar reasons.  Opp. at 7 (noting that *Monson*

cites *PDK Labs Inc.*, 134 F. Supp. 2d at 29 and *Novelty, Inc*, 2006 WL 2375485 at *1—two cases the D.C. Circuit criticized; *see also Doe*, 484 F.3d at 569 (rejecting the reasoning of *PDK Labs* and *Novelty, Inc.*)).  The Government's claim that *Monson* "relies" on *PDK Labs Inc.* and *Novelty, Inc.* is questionable.  Although the Eighth Circuit discusses those cases, *Monson* never weighs in on the legitimacy of the rule followed in either *PDK* or *Novelty*.  Nor did it need to, since unlike *PDK* and *Novelty* (and *Doe*), *Monson* did not involve a challenge to final agency action.  Instead, like Plaintiffs in this case, the *Monson* plaintiffs brought a claim under the Declaratory Judgment Act seeking confirmation of the legality of their planned hemp business.  589 F.3d at 958.

And *Monson* is not an outlier.  The First Circuit, in an opinion authored by Judge Michael Boudin, reached the same conclusion in *New Hampshire Hemp Council, Inc. v. Marshall*, 203 F.3d 1 (1st Cir. 2000).  That case arose from a defeated legislative proposal in New Hampshire to legalize the cultivation of "industrial hemp."  *Id.* at 3.  At a New Hampshire house subcommittee hearing on the proposed bill, a DEA representative "testified that regardless of intended 'industrial' use, the DEA views the cultivation of cannabis sativa plants as the manufacture of marijuana and therefore illegal under federal law (absent federal licensing)."  *Id.*

Soon after the bill was defeated by a narrow margin, Owen (one of the bill's co-sponsors) and the New Hampshire Hemp Council filed a lawsuit against DEA in federal district court.  In their complaint, the plaintiffs explained that they "wanted to cultivate cannabis sativa plants to produce fiber and other industrial products but were deterred by the DEA's position."  Accordingly, they "sought [among other things] a declaration that in defining marijuana, Congress had not criminalized the growth of 'non-psychoactive' (*i.e.*, low-THC) cannabis sativa …."  *Id.* at 4.  Although the district court dismissed the claims for lack of standing, the First Circuit rejected that aspect of the district court's decision.  *Id.*

The First Circuit then addressed several other threshold objections raised by DEA that are relevant to this case.  For example, in explaining why the *New Hampshire* plaintiffs' claims were ripe for review, Judge Boudin highlighted that DEA witness's statements regarding the illegality of industrial hemp cultivation gave rise to plaintiffs' right to seek a declaration from the district court confirming or denying the correctness of those statements:

> As for ripeness, the issue posed by Owen is an abstract one of statutory interpretation: whether the federal statute makes criminal the production of cannabis sativa for use in making industrial products. *And the DEA's emphatic position equitably argues for review—not because there is anything wrong with the agency expressing its view but because, that view having been expressed, there ought to be a way to resolve the legal correctness of its position without subjecting an honest businessman to criminal penalties well known for their severity and inflexible administration.* *See generally* 13A Wright, Miller, & Cooper, *supra*, § 3532.5, at 183–84.
>
> The DEA points out that it can license marijuana production, *see* 21 U.S.C. §§ 822–23; 28 C.F.R. § 0.100(b) (1999), and that Owen has not sought a license. But whether viewed as a ripeness objection or one based on a failure to exhaust remedies, the objection is unsound here, even if there were some realistic prospect of a license for Owen. Owen's position is that his proposed production of industrial products is not marijuana production under the statute and therefore not subject to the statute at all, whether as a prohibition or licensing scheme. If he were correct, it is hard to see why he should be forced to apply for a license. *Cf. Leedom v. Kyne*, 358 U.S. 184, 188–89, (1958).

*Id.* at 5-6 (emphasis added).

In addition to affirming the ripeness of the *New Hampshire* plaintiffs' claims for declaratory relief, the above passage is also notable because Judge Boudin, a former Judge of this Court, expressly recognized the applicability of *Leedom v. Kyne*, 358 U.S. 184, 188-89 (1958). Although Plaintiffs acknowledge that *Leedom* is applied in relatively limited circumstances, *see, e.g.*, *Mapes v. Reed*, No. CV 20-223, 2020 WL 5545397 (D.D.C. Sept. 16, 2020) (Boasberg, J.), the fact that Judge Boudin cited *Leedom* in a case so remarkably similar to this one—i.e., a claim

filed against DEA in federal district court seeking declaratory relief clarifying the legality of plaintiffs' business activities after DEA's statements left the regulated public uncertain regarding their vital legal rights and obligations—speaks for itself. *But see* Opp. at 5. n.4 (declaring, without explanation, that *Leedom* is "plainly" and "obviously" inapplicable here).

Finally, the Eastern District of Wisconsin has also considered and rejected the Opposition's core jurisdictional argument. *Menominee Indian Tribe of Wisconsin v. DEA*, 190 F. Supp. 3d 843 (E.D. Wis. 2016). When federal agents raided the reservation lands of the Menominee Indian Tribe of Wisconsin, and seized and destroyed a hemp crop grown under a 2015 tribal ordinance legalizing hemp cultivation, the Tribe filed suit in federal district court seeking a judgment declaring that its cultivation of industrial hemp was lawful under the 2014 Farm Bill. DEA moved to dismiss on the grounds that, *inter alia*, the Tribe had "failed to identify any applicable 'private right of action' authorizing this suit.'" *Id.* at 848. Indeed, DEA's objection is almost identical to the one the Government raises here:

> Specifically, the Government argues the Declaratory Judgment Act "is not an available vehicle" for the Tribe's claims because the Act "does not provide a private right of action," but instead merely "provides an additional remedy where an independent right of action already exists." Government's Br. In Supp. of Mot. to Dismiss 1, ECF No. 16.

*Menominee*, 190 F. Supp. 3d at 848.

The district court rejected DEA's argument, explaining that "[t]here is a significant difference between an action that seeks to vindicate a putative right federal law does not afford from one that seeks protection from punishment for conduct that federal law expressly allows." *Id.* The Court emphasized that "the express language of the Declaratory Judgment Act" confirms that "declaratory relief may be granted 'whether or not further relief is or could be sought.'" *Id.* (quoting 28 U.S.C. § 2201). "In other words," the Court added, "whether or not there is a private

right of action." *Id.* After explaining that "'where threatened action by Government is concerned, [courts] do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat,'" the Court concluded it had jurisdiction over the Tribe's claim. *Id.* at 850 (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 118-19). The same reasoning applies with equal force here.

To summarize, the Government's jurisdictional argument rests on a mischaracterization of Plaintiffs' claims. Plaintiffs do not challenge the IFR in this Court. Instead, like the plaintiffs in *Monson*, *New Hampshire Hemp Council*, and *Menominee Indian Tribe of Wisconsin*, Plaintiffs in this case seek a declaration confirming the legality of conduct vital to their interests. Like the courts in those cases, this Court should reject the Government's vision of a world where no claim challenging its views, decisions, or statements can ever escape the closed loop of § 877.

The Government cites several cases in its response, but none that considers—much less refutes—any of the well-reasoned decisions discussed above. Indeed, the Government fails to cite a single case supporting its view that § 877 divests this Court of jurisdiction over a claim seeking declaratory relief clarifying the legality of conduct vital to a plaintiff's interest but without challenging a final determination of DEA. Lacking any authority to support the application of § 877 to divest this Court of jurisdiction over Plaintiffs' claims, the Government simply pretends Plaintiffs raise *different* claims, namely ones that challenge the IFR. The Government cannot divest this Court of jurisdiction by pretending Plaintiffs' actual claims do not exist.

## II.     Plaintiffs Are Justified in Seeking Their Narrowly Tailored Expedited Discovery

Plaintiffs seek DEA's responses to two interrogatories regarding the applicability of the CSA (as amended by the 2018 Farm Bill) to essential and inevitable byproducts of the hemp production process. Instead of providing the requested answers, however, the Government mischaracterizes the purpose and exaggerates the scope and burden of Plaintiffs' interrogatories.

First, there is nothing "hypothetical" about the concern underlying Plaintiffs' interrogatories: DEA has made statements suggesting that, in its view, essential byproducts of the hemp production process are Schedule I substances under the CSA. If that is in fact DEA's view, Plaintiffs (and their members) could be subjected to criminal liability under the CSA. *See, e.g.*, *MedImmune*, 549 U.S. at 118-19 ("Where threatened action by Government is concerned, a plaintiff is not required to expose himself to liability before bringing suit to challenge the basis for the threat."); *Monson*, 589 F.3d at 958 ("[A] party need not expose himself to arrest or prosecution under a criminal statute in order to challenge that statute in federal court.") (citations omitted).

Second, Plaintiffs are—decidedly—*not* propounding interrogatories to "force DEA to develop a policy on a particular issue." Opp. at 10. As noted above, Plaintiffs' third cause of action seeks an affirmative judicial determination that DEA *lacks* any independent authority to develop such policy. *See* ECF No. 1 at ¶¶ 103-110. The purpose of Plaintiffs' interrogatories is simply to ascertain whether DEA's interpretation of the CSA (as modified by the 2018 Farm Bill) comports with, or contradicts, Congress' intent. DEA's refusal to respond seemingly suggests the latter, but its most recent public statements on the topic are ambiguous. *See, e.g.*, Mot. at 7.

Third, Plaintiffs are not seeking to use the requested interrogatories "to obtain factual evidence to support" a motion for preliminary injunction. Opp. at 9. On the contrary: Plaintiffs seek responses to their interrogatories to determine whether a motion for preliminary injunction (or even this lawsuit) is necessary in the first place. This conservative approach affords DEA the chance to clarify its ambiguous statements and, if DEA's interpretation aligns with Congress' intent, will allow Plaintiffs to dismiss this action and spare judicial resources.

Finally, although Plaintiffs seek responses to just two, pointed interrogatories, the Opposition asserts that "Plaintiffs are mistaken in describing their proposed discovery requests as

'narrow' and imposing a 'minimal' burden." Opp. at 9. But the fact that Plaintiffs' interrogatories seek DEA's position regarding the applicability of the CSA as to specific hemp byproducts does not render such discovery burdensome or inappropriate. In fact, Rule 33(a)(2) states that "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact…," and the Advisory Committee Notes accompanying the Rule confirm that contention interrogatories calling "for the application of law to fact [] can be most useful in narrowing and sharpening the issues, which is a major purpose of discovery," Fed. R. Civ. P. 33 advisory committee's notes (1970). *See also* Moore's Federal Practice § 33.78 ("interrogatories requiring legal or factual conclusions or opinions are proper when they serve a substantial purpose in expediting the lawsuit, leading to evidence, or narrowing the issues") (collecting cases). Given that DEA's responses could result in the expedited disposal of Plaintiffs' action, contention interrogatories are justified here. The Government's own authority supports the same conclusion. *See, e.g.*, *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328 (N.D. Cal. 1985) (noting that "early answers to contention interrogatories" are justified when the propounding party "hand-craft[s] a limited set of questions" and establishes that "answers to its well-tailored questions will contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, or setting up early settlement discussions").

In light of the legitimate purpose and limited scope of Plaintiffs' interrogatories; the minimal burden imposed on the Government; the specific reason that Plaintiffs have refrained from filing a motion for preliminary injunction; and the judicial efficiency promoted by Plaintiffs' conservative approach, Plaintiffs' requested discovery is justified.

## III.   Conclusion

For the reasons stated herein and the Motion, Plaintiffs respectfully request that the Court order DEA to answer the requested interrogatories. Plaintiffs also respectfully request an oral

hearing on the jurisdictional issues raised in the Motion, the Government's Opposition, and this Reply.

Dated:  November 23, 2020

Respectfully submitted,

By: _/s/ David Kramer_
  David C. Kramer, Esq. (Bar ID
    CA00069)
  VICENTE SEDERBERG LLP
  633 West 5th Street, 26th Floor
  Los Angeles, CA 90071
  Telephone: (303) 860-4501
  Email:  d.kramer@vicentesederberg.com

  Shawn Hauser, Esq. (admitted pro hac vice)
  Michelle Bodian, Esq. (admitted pro hac vice)
  VICENTE SEDERBERG LLP
  455 Sherman Street, Suite 390
  Denver, CO 80203
  Telephone: (303) 860-4501
  Emails:  shawn@vicentesederberg.com
        m.bodian@vicentesederberg.com

  Rod Kight, Esq.† (admitted pro hac vice)
  KIGHT LAW OFFICE PC
  84 West Walnut Street, Suite 201
  Asheville, NC 28801
  Telephone: (828) 255-9881
  Email:  rod@kightlaw.com

  Robert Hoban, Esq.† (admitted pro hac vice)
  Garrett Graff, Esq.*†
  HOBAN LAW GROUP
  730 17th Street, Suite 420
  Denver, CO 80202
  Telephone: (844) 708-7087
  Emails: bob@hoban.law
        garrett@hoban.law

  Patrick D. Goggin, Esq.*†
  HOBAN LAW GROUP
  870 Market Street, Suite 1148
  San Francisco, CA 94102

-13-

Telephone: (844) 708-7087
Email:   patrick@hoban.law


*Attorneys for Plaintiffs*

*\*Application for admission pro hac vice to be submitted*

*†Counsel for Plaintiff RE Botanicals, Inc. only*