**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

|  |  |  |
|---|---|---|
| HEMP INDUSTRIES ASSOCIATION, and RE BOTANICALS, INC., | ) ) ) ) | |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | Case No. 1:20-cv-02921-JEB |
| U.S. DRUG ENFORCEMENT ADMINISTRATION, and DARRELL C. EVANS,[1] in his official capacity as Acting DEA Administrator, | ) ) ) ) ) | |
| *Defendants*. | ) ) | |

---

**DEFENDANTS' REPLY MEMORANDUM**
**IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

---

[1] Darrell C. Evans is automatically substituted as a defendant in his official capacity.  *See* Fed. R. Civ. P. 25(d).

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................1

I.    The specific statutory provisions Plaintiffs will rely on for their merits arguments are not relevant to the jurisdictional questions here. ..............................................................1

II.    If Plaintiffs truly do not challenge the IFR, they cannot satisfy Article III. ..............................2

    A.    Plaintiffs cannot establish standing based on future prosecution. ...................2

    B.    Plaintiffs' claims are not ripe...........................................................................4

III.    Section 877 requires Plaintiffs to pursue their claims in a court of appeals. ...........................5

    A.    Plaintiffs challenge the IFR. ...........................................................................6

    B.    Plaintiffs' contention that they do not challenge the IFR is implausible.......................7

    C.    The D.C. Circuit's decision in *Doe* governs, not the Eighth Circuit's decision in *Monson*. ..................................................................................................14

    D.    Plaintiffs cannot evade exclusive jurisdiction by framing their claims as a preenforcement challenge. ..........................................................................15

    E.    Jurisdiction is not proper under *Leedom v. Kyne*. .........................................18

IV.    The Court should decline to exercise equitable jurisdiction regardless....................................20

CONCLUSION...................................................................................................................21

i

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Abbott Labs v. Gardner,*
   387 U.S. 136 (1967) ................................................................................................................5

*Air Line Pilots Ass'n, Int'l v. Civil Aeronautics Bd.,*
   750 F.2d 81 (D.C. Cir. 1984) ...............................................................................................13

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump,*
   929 F.3d 748 (D.C. Cir. 2019) ..................................................................................15, 17, 18

*Arch Coal, Inc. v. Acosta,*
   888 F.3d 493 (D.C. Cir. 2018) ..............................................................................................17

*Austin v. United States,*
   847 A.2d 391 (D.C. 2004) .......................................................................................................3

*Babbitt v. United Farm Workers Nat. Union,*
   442 U.S. 289 (1979) ................................................................................................................4

*C&E Servs., Inc. of Wash. v. D.C. Water & Sewer Auth.,*
   310 F.3d 197 (D.C. Cir. 2002) ..............................................................................................10

*Cal. Save Our Streams Council, Inc. v. Yeutter,*
   887 F.2d 908 (9th Cir. 1989) ................................................................................................10

*Ctr. for Biological Diversity v. EPA,*
   861 F.3d 174 (D.C. Cir. 2017) ................................................................................................6

*DCH Reg'l Med. Ctr. v. Azar,*
   925 F.3d 503 (D.C. Cir. 2019) ..............................................................................................19

*Elgin v. Dep't of Treasury,*
   567 U.S. 1 (2012) ..................................................................................................................16

*Elk Run Coal Co. v. U.S. Dep't of Labor,*
   804 F. Supp. 2d 8 (D.D.C. 2011) ..........................................................................................17

*Federal Communications Commission v. ITT World Communications, Inc.,*
   466 U.S. 463 (1984) ........................................................................................................10, 11

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.,*
   561 U.S. 477 (2010) ....................................................................................................16, 17, 18

ii

*Gen. Fin. Corp. v. FTC,*
    700 F.2d 366 (7th Cir. 1983) ........................................................................................10

*Heller, Ehrman, White & MacAuliffe v. Babbitt,*
    992 F.2d 360 (D.C. Cir. 1993) .............................................................................1, 5, 10

*Jamison v. FTC,*
    628 F. Supp. 1548 (D.D.C. 1986) ................................................................................13

*Jarkesy v. SEC,*
    803 F.3d 9 (D.C. Cir. 2015) ..........................................................................16, 17, 18

*John Doe Inc. v. Drug Enforcement Administration,*
    484 F.3d 561 (D.C. Cir. 2007) ...............................................................................8, 18

*N.H. Hemp Council, Inc. v. Marshall,*
    203 F.3d 1 (1st Cir. 2000) .......................................................................................5, 14

*Nat'l Park Hosp. Ass'n v. Dep't of Interior,*
    538 U.S. 803 (2003) .......................................................................................................5

*Navegar, Inc. v. United States,*
    103 F.3d 994 (D.C. Cir. 1997) .......................................................................................3

*New Mexico v. Regan,*
    745 F.2d 1318 (10th Cir. 1984) ...................................................................................10

*Novelty Distributors, Inc. v. Leonhart,*
    562 F. Supp. 2d 20 (D.D.C. 2008) ...............................................................................15

*Nyunt v. Chairman, Broad. Bd. of Governors,*
    589 F.3d 445 (D.C. Cir. 2009) .....................................................................................19

*O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft,*
    282 F. Supp. 2d 1236 (D.N.M. 2002), *aff'd*, 342 F.3d 1170 (10th Cir. 2003) ....................15

*Ord v. District of Columbia,*
    587 F.3d 1136 (D.C. Cir. 2009) .................................................................................3, 4

*Parker v. District of Columbia,*
    478 F.3d 370 (D.C. Cir. 2007), *aff'd*, 554 U.S. 570 (2008) ........................................2, 3

*Pub. Util. Comm'r of Or. v. Bonneville Power Admin.,*
    767 F.2d 622 (9th Cir. 1985) .......................................................................................13

*Seegars v. Gonzales,*
    396 F.3d 1248 (D.C. Cir. 2005) .....................................................................................3

*Susan B. Anthony List v. Driehaus,*
  573 U.S. 149 (2014) ....................................................................................................4

*Swish Mktg., Inc. v. FTC,*
  669 F. Supp. 2d 72 (D.D.C. 2009) ...........................................................................20

*Telecommunications Rsch. & Action Ctr. v. FCC,*
  750 F.2d 70 (D.C. Cir. 1984) .........................................................................11, 12, 13

*Thunder Basin Coal Co. v. Reich,*
  510 U.S. 200 (1994) ...............................................................................................15, 16

*Time Warner Ent. Co. v. FCC,*
  93 F.3d 957 (D.C. Cir. 1996) ...................................................................................17

*Toilet Goods Ass'n v. Gardner,*
  387 U.S. 158 (1967) ....................................................................................................5

*Ukiah Adventist Hosp. v. FTC,*
  981 F.2d 543 (D.C. Cir. 1992) ...................................................................................9

*United States v. Mallory,*
  372 F. Supp. 3d 377 (S.D.W. Va. 2019) ...................................................................15

*United States v. Safehouse,*
  408 F. Supp. 3d 583 (E.D. Pa. 2019) .......................................................................15

*Woodhull Freedom Found. v. United States,*
  948 F.3d 363 (D.C. Cir. 2020) ...................................................................................4

*Woods v. DEA,*
  283 F. Supp. 3d 649 (W.D. Tenn. 2017) ..................................................................14

**STATUTES**

5 U.S.C. § 553b ...............................................................................................................11

5 U.S.C. § 7702 ...............................................................................................................16

7 U.S.C. § 1639o ...........................................................................................................1, 6

7 U.S.C. § 1639r .................................................................................................1, 6, 7, 19

21 U.S.C. § 811 ...............................................................................................................16

21 U.S.C. § 823 ...............................................................................................................16

21 U.S.C. § 824 .................................................................................................................16

21 U.S.C. § 843 .................................................................................................................16

21 U.S.C. § 856 .................................................................................................................16

21 U.S.C. § 871 .................................................................................................................16

21 U.S.C. § 877 ..........................................................................................................1, 5, 16

21 U.S.C. § 882 .................................................................................................................16

28 U.S.C. § 1331 ...............................................................................................................12

## REGULATIONS

Implementation of the Agriculture Improvement Act of 2018,
   85 Fed. Reg. 51,639 (Aug. 21, 2020) ..........................................................................6

## INTRODUCTION

As Defendants explained in their motion, this Court lacks jurisdiction over Plaintiffs' suit. Plaintiffs attempt to evade the clear import of 21 U.S.C. § 877 and the D.C. Circuit's explanation of that statute's scope by continuing to insist that they do not challenge the Interim Final Rule (IFR) that causes the injury they seek to remedy.  If that is truly so, then they lack standing under D.C. Circuit law.  But if, as Defendants maintain, their suit is a vehicle for challenging the IFR, then § 877 requires them to pursue their claims in a court of appeals.  A plaintiff may not "circumvent a congressional grant of exclusive jurisdiction" by "creatively framing their complaint."  *Heller, Ehrman, White & MacAuliffe v. Babbitt*, 992 F.2d 360, 363 (D.C. Cir. 1993).  Plaintiffs either challenge the IFR, in which case § 877 directs them to the courts of appeals, or else they challenge nothing in particular, in which case they cannot establish Article III jurisdiction.

But the Court need not even resolve these issues.  Because Plaintiffs invoke the Court's equitable jurisdiction, the Court has discretion to decline to exercise that jurisdiction.  In this case, the Court should decline jurisdiction even if it were technically proper.  Plaintiffs' claims are better raised in their petition for review proceedings currently pending in the D.C. Circuit.

## ARGUMENT

I.    **The specific statutory provisions Plaintiffs will rely on for their merits arguments are not relevant to the jurisdictional questions here.**

Plaintiffs' opposition opens with a red herring.  Plaintiffs contend that Defendants have misunderstood Plaintiffs' challenge to DEA regulation of in-process hemp materials as resting on the statutory definition of hemp set out in 7 U.S.C. § 1639*o*, when Plaintiffs' argument will rely on 7 U.S.C. § 1639*r*. *See* Pls.' Mem. of P.&A. in Opp'n to Defs.' Mot. to Dismiss, at 1, ECF No. 33 ("Pls.' Opp'n"); *id.* at 12–13.  But the specific arguments Plaintiffs might raise against the soundness of the IFR, and against DEA's interpretations contained within that IFR, do not render this action something other than a challenge to the IFR.  Thus, it does not matter if Plaintiffs' argument is that the IFR misinterprets the definition of hemp set out in § 1639o, *see* First Am. Compl. For Declaratory &

Injunctive Relief, ¶¶ 32-39, ECF No. 29 ("FAC") (describing process that results in high-THC concentrations for intermediate hemp materials (IHM) and waste hemp materials (WHM)), ¶¶ 66–71 (describing the definitional provision and its development), ¶¶ 83–86 (describing DEA actions related to definition of hemp), ¶¶ 98–105 (claim for declaratory relief focused on the definition of hemp), or instead is that with the IFR DEA has trespassed on the Department of Agriculture's (USDA) regulatory authority under § 1639r, *see* FAC ¶¶ 63–65 (discussing USDA authority), ¶ 82 (asserting DEA IFR is "in defiance of" § 1639r),¶¶ 107–108 (claim for injunctive relief focused on USDA's regulatory authority), or whether they make both arguments. Plaintiffs' new focus on § 1639r not only rests on a mistaken understanding of the law, *see infra* at section III.E, but is also irrelevant to the jurisdictional questions now before the Court. Whatever merits arguments Plaintiffs seek to raise in opposition to the IFR—and all the arguments Plaintiffs identify do target the IFR—must be litigated in a court of appeals.

## II.    If Plaintiffs truly do not challenge the IFR, they cannot satisfy Article III.

Plaintiffs continue to insist that they do not challenge the IFR. That contention is belied by the operative complaint. *See* Defs.' Mot. to Dismiss, at 8-10, ECF No. 30 ("Defs.' MTD"); *see also, e.g.*, FAC ¶¶ 82-84, 90, 95, 98-101. Taking them at their word, though, that their concern is not the IFR itself but instead is "possible prosecution and/or enforcement action" *in the future*, Pls.' Opp'n at 37–38, Plaintiffs' claims must be dismissed because Plaintiffs lack standing and their claims are not ripe.

### A.  *Plaintiffs cannot establish standing based on future prosecution.*

Article III precludes jurisdiction when a dispute is insufficiently concrete. Plaintiffs contend that they have standing based on possible prosecution or enforcement of the Controlled Substances Act (CSA). Pls.' Opp'n at 37. But, in the D.C. Circuit, a plaintiff cannot demonstrate injury-in-fact based only on "a general threat of prosecution." *Parker v. District of Columbia*, 478 F.3d 370, 374 (D.C. Cir. 2007), *aff'd*, 554 U.S.570 (2008). Rather, standing based on future prosecution is demonstrated

only if the plaintiffs "have been singled out or uniquely targeted . . . for prosecution." *Id.* at 375.  The D.C. Circuit thus requires "plaintiffs to demonstrate that enforcing the law against them represents a 'special priority for the government.'" *Ord v. District of Columbia*, 587 F.3d 1136, 1141 (D.C. Cir. 2009) (quoting *Seegars v. Gonzales*, 396 F.3d 1248, 1255 (D.C. Cir. 2005)).  Plaintiffs cannot meet this burden.

The D.C. Circuit has placed particular emphasis on the "identification of particular products manufactured only by" the plaintiffs. *Parker*, 478 F.3d at 374 (quoting *Navegar, Inc. v. United States*, 103 F.3d 994, 1001 (D.C. Cir. 1997)).  But "nothing in the IFR," Plaintiffs point out, "purports to address the manufacture and possession of IHM and WHM."  Pls.' Opp'n at 15.  The byproducts at issue— IHM and WHM—are "described solely by their characteristics"; Plaintiffs therefore have "no pre- enforcement standing because the threat of prosecution [is] shared among the (presumably) many" entities who handle substances fitting the regulatory description. *Parker*, 478 F.3d at 374.  And DEA officials' alleged subsequent statements, *see* FAC ¶¶ 84–86, state nothing more than an "intention to prosecute all violators," *Ord*, 587 F.3d at 1141, a "sentiment ubiquitous among stable governments the world over," *Parker*, 478 F.3d at 375.  Indeed, the statements Plaintiffs point to border on the banal: a DEA official allegedly stated that "you'll never hear DEA say that we're not going to enforce any federal law," FAC ¶ 84, and that in-process materials like IHM and WHM that meet the definition of a controlled substance required registration, ¶¶ 85-86.  Contrast this with *Ord*, where the D.C. Circuit found sufficient evidence to establish standing: the government had issued (and later withdrawn) a warrant for the arrest *of the specific plaintiff*.  587 F.3d at 1141–42.  The statements here, then, are much closer to those the D.C. Circuit found *insufficient* in *Seegars*, where the allegation was only a general position to "prosecut[e] 'all violators of the statute under normal prosecutorial standards.'"  396 F.3d at 1255 (quoting *Austin v. United States*, 847 A.2d 391, 393-94 (D.C. 2004)). Neither Plaintiffs' allegations, nor their unspecific reference to past enforcement actions unrelated to IHM and WHM (and presumably under a different, earlier statutory regime), *see* Decl. of Rick Trojan in Supp. of Pls.' Opp'n to Mot. to Dismiss, ¶ 4, ECF No. 33-1 "(Trojan Decl."), demonstrate that

DEA has made enforcement against Plaintiffs a "special priority," *Ord*, 587 F.3d at 1141 (citation omitted).

It bears emphasis that Plaintiffs do not make any constitutional claim. Contrary to Plaintiffs' suggestion, Pls.' Opp'n at 38 n.3, precedent strongly suggests that standing based on future enforcement is available only if three preconditions are met. The first requirement is that the conduct be "arguably affected with a constitutional interest." *Woodhull Freedom Found. v. United States*, 948 F.3d 363, 372 (D.C. Cir. 2020) (citation omitted). The second requirement is that the conduct be "arguably . . . proscribed by a statute"; the third is a "credible threat of prosecution," which, as discussed above, is absent here. *Id.* Thus, in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014), the Supreme Court set out the three-part test and analyzed each element separately. *Id.* at 161–67. In that case, the plaintiffs satisfied the first prong of the test "[b]ecause petitioners' intended future conduct concern[ed] political speech," which was "certainly 'affected with a constitutional interest.'" *Id.* at 162 (quoting *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979)). Not so here.

Lacking a constitutional interest or a credible threat of prosecution, Plaintiffs thus fail to meet two of the three requirements to establish standing. Absent standing, the Court must dismiss Plaintiffs' claims.

B. *Plaintiffs' claims are not ripe.*

For related reasons, Plaintiffs' claims—to the extent they do not challenge the IFR—also are not ripe. The difficult line-drawing between "hemp" on the one hand and "marihuana" on the other should be resolved in the more concrete context of specific agency action. And, even crediting Plaintiffs' dubious argument that only FDA, HHS, and USDA regulations are applicable to the "production of hemp," *see infra* Section III.E, the boundary between "production of hemp" and "everything else" will be far easier to discern in actual application or in view of specific agency action. "[P]remature adjudication" by the Court now will "entangle[e]" the Court "in abstract disagreements

over administrative policies." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (quoting *Abbott Labs v. Gardner*, 387 U.S. 136, 148–49 (1967)).

Plaintiffs have not rebutted the Supreme Court's admonition that it is "wiser to require [a plaintiff] to exhaust this administrative process through which the factual basis . . . will certainly be aired and where more light may be thrown on the [agency's] statutory and practical justifications" for any final determination. *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 166 (1967). Judicial review at that later point—assuming a dispute persists—will have the benefit of further factual development and legal refinement.

Plaintiffs again invoke *N.H. Hemp Council* for the proposition that an "emphatic position equitably argues for review." *See* Pls.' Opp'n at 39 (quoting *N.H. Hemp Council*, 203 F.3d at 5). In their view, the IFR is "powerful evidence that DEA has taken a definitive position on its authority to regulate matters relating to hemp production." Pls.' Opp'n at 40. Defendants respectfully submit that the best mechanism for "review" of that alleged "emphatic position" is through the statutory mechanism that Congress established and that these very Plaintiffs have employed in a parallel proceeding: immediate review of a final determination—the IFR itself—in a court of appeals. *See* 21 U.S.C. § 877. Otherwise, Plaintiffs' claims are not ripe.

## III.    Section 877 requires Plaintiffs to pursue their claims in a court of appeals.

Defendants maintain that Plaintiffs' challenge is best understood as a challenge to the IFR. A challenge to DEA's IFR is governed by 21 U.S.C. § 877 and must be brought in a court of appeals; Plaintiffs concede as much. Pls.' Opp'n at 18. They maintain, however, that they do not challenge the IFR and that their suit is indifferent to whether "the IFR is right or not." Pls.' Opp'n at 15. As Defendants have already explained, however, a plaintiff may not "circumvent a congressional grant of exclusive jurisdiction" by "creatively framing their complaint." *Heller, Ehrman, White & MacAuliffe*, 992 F.2d at 363; *see* Defs.' MTD at 10–14.

A. *Plaintiffs challenge the IFR.*

Plaintiffs complain that Defendants do not "illustrate" how the relief Plaintiffs seek—namely, an injunction "enjoining DEA from enforcing the CSA as to IHM and WHM," FAC ¶ 110, and a judicial declaration that "possession and manufacture of IHM and WHM during the hemp production process does not require registration under the CSA," FAC ¶ 105—would nullify the IFR. Pls.' Opp'n at 14. *But see* Defs.' MTD at 8. But whether that relief would affect the IFR in every application is not determinative; Plaintiffs' claims challenging its application in "a specific, concrete context," Pls.' Opp'n at 1, is "inextricably intertwined" in a challenge to the IFR itself. *See Ctr. for Biological Diversity v. EPA*, 861 F.3d 174, 187 (D.C. Cir. 2017). Granting the relief Plaintiffs seek would directly impact the IFR, as it would carve out an exemption from enforcement on the very IFR-focused grounds Plaintiffs present, *i.e.*, that the IFR misinterprets the CSA and violates the AIA. *See* FAC ¶¶ 82–83, 99–101; 107–110.

To elaborate, the operative complaint well illustrates why Plaintiffs' challenge, however framed, is to the IFR. Plaintiffs allege that the IFR sets out an interpretation of the CSA that means "that the CSA's registration requirements *do* continue to apply to entities handling" IHM and WHM. FAC ¶ 83; *see also* Implementation of the Agriculture Improvement Act of 2018, 85 Fed. Reg. 51,639, 51,641 (Aug. 21, 2020). They allege that this interpretation is inconsistent with the statutory definition of hemp, 7 U.S.C. § 1639o, and would contravene limits on DEA's authority implied in the AIA, 7 U.S.C. § 1639r. *See* FAC ¶¶ 99–101 (interpretation contrary to definition in § 1639o); FAC ¶¶ 107–108 (§ 1639r eliminates DEA authority to regulate IHM and WHM). As relief, Plaintiffs seek, first, a declaration that—contrary to the IFR—the CSA does not require registration for IHM and WHM, FAC ¶ 105, and second, an injunction enjoining DEA from enforcing the CSA as to IHM and WHM, FAC ¶ 110. Plaintiffs' continued insistence that they do not challenge the IFR does not withstand scrutiny. Their operative complaint specifically identifies the IFR as embodying what they contend is an incorrect interpretation of the relevant statutes and an unlawful assertion or regulatory authority. They seek an injunction enjoining DEA from asserting that regulatory authority and a judicial

declaration that their own, contrary interpretation is the correct one, and that they should be exempt from its application.

Contrary to Plaintiffs' suggestion, the mechanism by which Plaintiffs' suit would interfere with the IFR is straightforward. The IFR, in Plaintiffs' own allegations, necessarily means that the CSA's registration requirements "continue to apply," FAC ¶ 83, to entities handling IHM and WHM. Plaintiffs seek a judicial declaration that handling IHM "does not require registration under the CSA." FAC ¶ 105. They seek an injunction enjoining DEA from "enforcing the CSA as to IHM and WHM." FAC ¶ 110. It is hard to see how DEA could "continue to apply" the CSA registration requirements to IHM and WHM in the face of such relief. Indeed, that is the very reason that, "[a]s a practical matter," Plaintiffs "may dismiss the D.C. Circuit action" directly challenging the IFR, Pls.' Opp'n at 17, if they prevail: as a legal matter, DEA will no longer be able to enforce the IFR. And if Plaintiffs are under the impression that DEA can continue to enforce the registration requirements contemplated by the IFR even if the Court grants the declaratory and injunctive relief they seek, it is hard to see how they satisfy the redressability aspect of Article III standing.

Because Plaintiffs' suit, fairly read, is a challenge to the IFR, § 877 deprives this Court of jurisdiction and requires Plaintiffs to pursue their claims in a court of appeals.

B.  *Plaintiffs' contention that they do not challenge the IFR is implausible.*

Plaintiffs resist this conclusion on the principal grounds that they seek immunity from the IFR, not invalidation of the IFR, and that their suit is therefore a "structural or systemic" one. This argument is illogical. Immunity from the application of the IFR, rooted in an argument that the IFR misinterprets the CSA, unavoidably is an applied invalidation of the IFR. Plaintiffs suggest that rather than seeking to interfere with the IFR, they instead seek a "judicial determination confirming that immunity" that they contend is set forth in 7 U.S.C. § 1639r(b). This argument would get them nowhere even if it were not an attempt to re-write their complaint—which mentions "immunity" only once and relies on § 1639r only in reference to their claim for injunctive relief. *Compare* FAC ¶¶ 96–

105 (claim for declaratory relief based on definition of "hemp"), *with* FAC ¶¶ 106–10 (claim for injunctive relief referencing § 1639r).  For one, § 1639r confers no "immunity" on any entity.  Rather, the statute vests an *affirmative grant of regulatory authority* in USDA—it does not purport to immunize any entity or conduct or to exempt them from any law.  *See also infra* section III.E (describing limits of § 1639r).

But, for another, even crediting Plaintiffs' interpretation of that section would not transform their challenge to the IFR into something else.  Plaintiffs' theory appears to be that because the relief they seek, if awarded, would have an effect beyond the IFR, they need not and do not challenge the IFR itself.  Common sense shows this theory to be wrong: *any* challenge to a DEA final decision could be incorporated into a broader challenge; § 877 would be dead letter if a plaintiff could simply seek a declaration that DEA erred rather than challenging the supposed error itself.  And it is hardly uncommon for a party to make legal arguments that, if accepted, would have implications beyond the specific case.  As Defendants explained in their memorandum, the facts and posture of *John Doe Inc. v. Drug Enforcement Administration*, 484 F.3d 561 (D.C. Cir. 2007), underscore the error of Plaintiffs' theory.  The plaintiff in *Doe* sought to import specific substances it contended were Schedule III substances; DEA concluded that they were Schedule I substances and denied an import license.  484 F.3d at 564.  The D.C. Circuit held that the company's suit challenging that decision had to proceed in a court of appeals.  *Id.* at 568–70.  But, under Plaintiffs' theory, the company could instead have sued in district court for a judicial declaration that the substances were Schedule III substances, and an injunction enjoining DEA from denying an import license—any import license—on a contrary basis.  Such a theory would effectively nullify § 877.

Yet Plaintiffs' suit here attempts just that result: they object to DEA's interpretation of the CSA set out in the IFR, and they seek a judicial declaration that their alternative interpretation is correct and an injunction enjoining DEA from enforcing its interpretation.  Plaintiffs evidently agree that an action "ask[ing] the Court to opine on whether the IFR is valid or should be invalidated" would

fall within § 877's ambit.  Pls. Opp'n at 15.  But their suit does not cease to become a challenge to the IFR simply because the declaration and injunction they seek do not specifically identify the IFR as their targets.  An action seeking a declaration that "Plaintiffs' interpretation is correct" is just as much a challenge to the IFR as one seeking a declaration that "Plaintiffs' interpretation which is the opposite of the IFR is correct"; seeking to enjoin *all* regulations on the subject is just as much a challenge to the IFR as seeking to enjoin the IFR specifically.  Put otherwise, § 877 does not establish a pleading obstacle for savvy plaintiffs to avoid.  Rather, it sets out Congress's intent that challenges to DEA's final decisions proceed in a court of appeals.

Plaintiffs' contention that their suit is "structural or systemic" fails for the same reason.  Whether a suit challenges a particular action does not turn on the breadth of the argument.  Thus, a regulated entity could challenge an enforcement action on the narrow ground that the substances at issue are in fact Schedule III substances, on the broader basis that the substances are not scheduled at all, or on the still broader basis that import of the substances is within the Department of Commerce's exclusive regulatory jurisdiction.  At bottom, each is still a challenge to the regulatory action.  Faced with an offending regulation and a provision for exclusive review of that regulation, a plaintiff could simply expand his challenge to include both the regulation *and also other, similar, not yet enacted regulations*.  Under Plaintiffs' theory, the "systemic" nature of this challenge would eliminate any restriction on judicial review.  But, as the numerous citations (and there are many more) provided in Defendants' motion demonstrate, a plaintiff cannot use a declaratory judgment action to evade an exclusive review scheme.  *See* Defs.' MTD at 10–11 (collecting sources); *see also, e.g., Ukiah Adventist Hosp. v. FTC*, 981 F.2d 543, 550 (D.C. Cir. 1992) (expressly rejecting argument that exclusive review provision lapses when a "jurisdictional challenge" to the agency action "involves a purely legal question").  A "judicial declaration telling" DEA "how to interpret" the CSA or AIA "would constitute an end-run around Congress's clear intent that" the relevant agencies "interpret and enforce" them "in the first

instance." *C&E Servs., Inc. of Wash. v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002). "[T]he Declaratory Judgment Act does not authorize such a result." *Id.*

Thus, courts across the country have repeatedly rejected attempts to "circumvent a congressional grant of exclusive jurisdiction" by pleading broader relief. *Heller, Ehrman, White & MacAuliffe*, 992 F.2d at 363 (holding that plaintiff could not use an APA suit when "the crux of their complaint" was a takings claim that belonged in the Claims Court); *see also C&E Servs.*, 310 F.3d at 201 (holding that "the Declaratory Judgment Act does not authorize" an "end-run around Congress's clear intent" that an agency adjudicate the dispute in the first instance); *Gen. Fin. Corp. v. FTC,* 700 F.2d 366, 368 (7th Cir. 1983) ("You may not bypass the specific method that Congress has provided for reviewing adverse agency action simply by suing the agency in federal district court under 1331 or 1337; the specific statutory method, if adequate, is exclusive."); *Cal. Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908, 912 (9th Cir. 1989) (rejecting the suggestion that "the jurisdictional remedy hangs on the ingenuity of the complaint" and holding that a plaintiff could not seek "injunctive and declaratory relief" the "practical effect" of which was "an assault on an important ingredient" of the action subject to the exclusive review provision); *New Mexico v. Regan*, 745 F.2d 1318, 1322 (10th Cir. 1984) (holding that "the Claims Court's exclusive jurisdiction may not be avoided by framing a complaint in the district court as one seeking injunctive, declaratory, or mandatory relief when, in reality, the thrust of the suit is one seeking money from the United States" for which the Court of Claims has exclusive jurisdiction).

The Supreme Court's decision in *Federal Communications Commission v. ITT World Communications, Inc.*, 466 U.S. 463 (1984), is instructive. There, the FCC first denied the plaintiff company's petition for rulemaking limiting the FCC's consultation with foreign counterparts, and the company sought review in the D.C. Circuit. *Id.* at 466. Simultaneous to the D.C. Circuit proceedings, the company filed suit seeking to enjoin the FCC from consulting with foreign counterparts.[2] The Supreme Court

---

[2] The plaintiff company also sought separate relief under the Sunshine Act, for which Congress had expressly granted district court jurisdiction. *See* 466 U.S. at 466 & n.2 (citing 5 U.S.C. § 553b(h)(1)).

held that the district court lacked jurisdiction to grant injunctive relief: "Exclusive jurisdiction for review of final FCC orders, such as the FCC's denial of respondents' rulemaking petition, lies in the Court of Appeals. . . . Litigants may not evade these provisions by requesting the District Court to enjoin action that is the outcome of the agency's order." *Id.* at 468 (citations omitted). The company's suit for an injunction (or declaratory relief, *see id.* at 468 n.5) was barred because "[i]n substance," it "raised the same issues and sought to enforce the same restrictions" as those at issue in the rulemaking. *Id.* at 468.

Plaintiffs' claims in this action are similarly barred. The DEA has issued an IFR that, in Plaintiffs' own telling, means the CSA's registration requirements apply to IHM and WHM. Plaintiffs object that the IFR is in conflict with various statutory provisions, and have filed a petition for review of the IFR to present those (and other) challenges. They have also filed this suit, seeking declaratory and injunctive relief, which "[i]n substance," *id.*, raises the same issue—whether the CSA registration requirements apply to IHM and WHM—as is raised by the IFR and Plaintiffs' pending challenge to the IFR. If this Court grants Plaintiffs' claim for an injunction or declaratory relief, it will be deciding the issue presented by the IFR, and compelling DEA to act accordingly. Thus, as in *ITT World*, "the gravamen of both the judicial complaint and the [petition for review] was to require the agency to conduct future" agency action "on the terms that [Plaintiffs] propose[]." 466 U.S. at 468 n.5. Also as in *ITT World*, then, Plaintiffs' claim for prospective relief must be rejected.

As Defendants explained in their motion, the D.C. Circuit's decision in *TRAC* reinforces this conclusion. Defs.' MTD at 12–14 (citing *Telecommunications Rsch. & Action Ctr. v. FCC (TRAC)*, 750 F.2d 70 (D.C. Cir. 1984), and related cases). *TRAC* is certainly a multifaceted case. But the relevant upshot of *TRAC* is that a district court may not exercise jurisdiction when doing so might "affect [the Court of Appeals'] future statutory review authority." *TRAC*, 750 F.2d at 77. In *TRAC* itself, the D.C. Circuit held that when it had exclusive jurisdiction over review of final agency action, it also had exclusive jurisdiction over review of a claim that agency action was unreasonably delayed. *Id.* The

rule it set out was broad: "any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to the exclusive review of the Court of Appeals." *Id.* at 78–79. Cognizant of the breadth of such a rule, the court counseled that suits "concerning nonfinal agency action" that "mistakenly may have been filed in the District Court," should be transferred to the court of appeals rather than dismissed for want of jurisdiction. *Id.* at 79 n.37.

Plaintiffs contend that the doctrine set out in *TRAC* does not apply to or prohibit this action for two reasons. But Plaintiffs' reasons are both legally and factually flawed. First, they contend that the doctrine is limited to actions that would "deprive the court of appeals of the power to hear a case." Pls.' Opp'n at 24. But the *TRAC* court's concern with being deprived of jurisdiction was not tied to its *exclusivity* holding, but rather to its separate holding that the court of appeals itself had jurisdiction to adjudicate claims of action unreasonably withheld. That power, the D.C. Circuit held, arose from its power under the All Writs Act to take actions necessary to preserve its future jurisdiction: if the agency refused to act, the court would be unable to exercise its review authority. 750 F.2d at 76. On the issue of exclusivity—the issue relevant to these proceedings—the Court explained that the exclusive review provision cut off district court jurisdiction under the federal question statute, 28 U.S.C. § 1331, and that the district court could not rely on the All Writs Act (as had the Court of Appeals) because it had no future jurisdiction to protect. *TRAC*, 750 F.2d at 77. The exclusive jurisdiction of the Court of Appeals' promoted important policies: "judicial economy and fairness to the litigants by taking advantage of" the "expertise concerning the agencies" assigned to the appellate court's review, and the elimination of "duplicative and potentially conflicting review," and of the consequent "delay and expense." *Id.* at 78.

The court thus framed the rule more broadly as precluding district court jurisdiction in cases that might "affect" the court of appeals' future review. 750 F.2d at 77; *see, e.g.*, *Jamison v. FTC*, 628 F. Supp. 1548, 1550–51 (D.D.C. 1986) (explaining that "the language should be broadly construed"). Indeed, in a companion case to *TRAC*, decided the same week, the D.C. Circuit explained that *TRAC*

provided for exclusive review of claims of bias even though "[u]nlike unreasonable delay, bias does not pose [a] threat of totally defeating the Court of Appeals' power of review." *Air Line Pilots Ass'n, Int'l v. Civil Aeronautics Bd.*, 750 F.2d 81, 88 (D.C. Cir. 1984).  Courts applying *TRAC* have therefore not understood it to cut off district court jurisdiction only where relief in that court would cut off jurisdiction in the court of appeals entirely.  Thus, the Ninth Circuit rejected district court jurisdiction over a charge of agency bias in ongoing proceedings, even though the remedy—recusal of the involved official—would not prevent the agency from reaching a final decision reviewable in the court of appeals.  *See Pub. Util. Comm'r of Or. v. Bonneville Power Admin.*, 767 F.2d 622, 627 (9th Cir. 1985). Because "the disposition of petitioners' claim of bias could affect [the Ninth Circuit's] future statutory review authority, [it had] exclusive jurisdiction to consider it." *Id.* (citing *TRAC*, 750 F.2d at 77). Simply put, Plaintiffs are mistaken in their understanding of *TRAC* as limited to instances where district court review would literally cut off jurisdiction in the court of appeals.

Plaintiffs' second reason for contending *TRAC* is inapplicable here is that, they argue, *TRAC* only limits district court review when there is a challenge to *ongoing* proceedings.  But nothing about the reasoning of *TRAC* would limit it to ongoing proceedings—enjoining agency action not yet begun affects the court of appeals' review just as much as enjoining agency action that is ongoing.  In either case, the same risks of interference attach, and the litigants are deprived of the court of appeals' specific expertise.  To be sure, the issue is most likely to arise, as it did in *TRAC*, in the context of ongoing proceedings.  Where there is no agency action yet begun, other judicial doctrines—standing, ripeness, administrative exhaustion, for example—are likely to displace the need for a distinct analysis under *TRAC*.

But the Court need not resolve all the nuances of the *TRAC* doctrine, because the limitations Plaintiffs suggest are not presented by the facts they have alleged.  First, because Plaintiffs challenge the IFR, it is § 877, not *TRAC*, that confines jurisdiction to the courts of appeals.  Second, an injunction enjoining DEA from regulating IHM and WHM *at all* (as Plaintiffs seek) would necessarily

"deprive" the courts of appeals of jurisdiction.  If the agency cannot act because of an injunction, there is nothing for the court to review, just as, in *TRAC* itself, there would be nothing for the court to review if the agency chose not to act.  Third, the agency has in fact initiated an ongoing administrative process that Plaintiffs' suit will disrupt: the rulemaking process of which the IFR is a part.

C.  *The D.C. Circuit's decision in* Doe *governs, not the Eighth Circuit's decision in* Monson.

Plaintiffs again resort to the Eighth Circuit's decision in *Monson* in their effort to escape the strictures of § 877 as interpreted in this Circuit.  But as Defendants have previously noted, that case is wrong on the law, not binding on this Court, and in clear tension with binding D.C. Circuit precedent. Defs.' MTD at 14–15.  In any event, this case has the important ingredient that the Eighth Circuit found missing: final agency action, in the form of the IFR.  As other courts have recognized, *Monson* should not be followed.  The District Court for the District of Western Tennessee, for example, rejected *Monson* and held that § 877 required plaintiffs to obtain judicial relief in a court of appeals even when the plaintiffs argued that, like the Plaintiffs in this action, they were "not challenging a final action but the applicability of the regulation entirely."  *See Woods v. DEA*, 283 F. Supp. 3d 649, 663 (W.D. Tenn. 2017).

The court in *New Hampshire Hemp Council, Inc. v. Marshall*, 203 F.3d 1 (1st Cir. 2000), did not address the jurisdictional issue raised here, as Plaintiffs concede.  Pls.' Opp'n at 31.  Plaintiffs also concede that the district court in *Novelty Distributors, Inc. v. Leonhart*, 562 F. Supp. 2d 20, 26 (D.D.C. 2008), relied on a statutory provision "which is not at issue here."  Pls.' Opp'n at 30.[3]  Plaintiffs then also cite a number of cases where the plaintiff sought a declaratory judgment under a separate and specific authorization to do so.  *See O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 282 F.

---

[3] The *Novelty* court observed that a court of appeals would have jurisdiction only over final agency action, and that therefore only "a district court" can have jurisdiction before, to determine which courts could be a "court of competent jurisdiction" under the specific statutory provision.  *See* 562 F. Supp. 2d at 24–25.

Supp. 2d 1236, 1240 (D.N.M. 2002) (declaratory relief under RFRA, §2000bb–1(c)), *aff'd*, 342 F.3d 1170 (10th Cir. 2003); *United States v. Safehouse*, 408 F. Supp. 3d 583, 593 (E.D. Pa. 2019) (declaratory relief under 21 U.S.C. § 856(e)); *United States v. Mallory*, 372 F. Supp. 3d 377, 382 (S.D.W. Va. 2019) (declaratory relief under 21 U.S.C. § 843(f)).   None of these cases undermines Defendants' central point that this dispute—like all challenges to final determinations under the CSA—must be heard in a court of appeals.

   D.   *Plaintiffs cannot evade exclusive jurisdiction by framing their claims as a preenforcement challenge.*

   As set forth at length above and in Defendants' motion, a plaintiff cannot evade an exclusive review provision by artful pleading.   Plaintiffs nonetheless insist they may obtain declaratory and injunctive relief in the nature of a preemptive challenge.   That is wrong for all the reasons already given.   It also flouts reality.   There is nothing "preemptive" about this challenge: Plaintiffs initiated it only after DEA published the IFR that Plaintiffs object to.   For this reason, the Court need not decide whether § 877 would bar a preemptive challenge.

   If the issue is reached, however, § 877 would in fact preclude review.   Provisions like § 877, which provide for review in a court of appeals at the conclusion of an administrative process, generally preclude jurisdiction in the district courts even over preemptive challenges.   *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 929 F.3d 748, 754 (D.C. Cir. 2019).   The D.C. Circuit applies the "two-step framework set forth in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994)," to determine whether a preemptive suit is precluded.   *AFGE*, 929 F.3d at 754.   District courts lack jurisdiction over suits like this one when the intent for exclusive review in the court of appeals is "'fairly discernible in the statutory scheme,' and [] the litigant's claims are 'of the type Congress intended to be reviewed within [the] statutory structure.'"   *Jarkesy v. SEC*, 803 F.3d 9, 15 (D.C. Cir. 2015) (quoting *Thunder Basin*, 510 U.S. at 207, 212).

   When "Congress creates procedures designed to permit agency expertise to be brought to bear on particular problems, those procedures are to be exclusive."   *Jarkesy*, 803 F.3d at 16 (quoting *Free*

15

*Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 489 (2010)). The CSA provides for DEA to exercise its judgment and expertise, for example, in drug scheduling decisions, 21 U.S.C. § 811, registration decisions, *id.* § 823, revocation decisions, *id.* § 824, and rulemakings, *id.* § 871(b). Those decisions are subject to review exclusively in a court of appeals. *Id.* § 877. That other provisions carve out exceptions for specific cases does not eliminate the broad intent to channel judicial review to the courts of appeals when those conditions are not met.[4] *See Thunder Basin*, 510 U.S. at 209 (plaintiff had to use statutory procedures even though MSHA also provided for district court jurisdiction over government enforcement actions). The Supreme Court has held that the Civil Service Reform Act, for example, satisfies *Thunder Basin*'s strictures, *e.g., Elgin v. Dep't of Treasury*, 567 U.S. 1, 10–12 (2012), even though that statute expressly preserves district court jurisdiction for certain claims of discrimination, *id.* at 13 (citing 5 U.S.C. 7702(a)(1)(B)). As in that statute, the specific provisions in the CSA authorizing district court jurisdiction, such as § 882, "demonstrate[] that Congress knew how to provide alternative forums for judicial review based on the nature of [the] claim." *Id.* Because Plaintiffs' claims do not fall within those exceptions, they must be raised, if at all, through the administrative review mechanism culminating in court of appeals review.

Plaintiffs do not bring a constitutional challenge to the statutory structure, which might require a different analysis. *See, e.g., Elk Run Coal Co. v. U.S. Dep't of Labor*, 804 F. Supp. 2d 8, 19–20 (D.D.C. 2011) (discussing cases, including *Free Enter.*, 561 U.S. 477). *Cf. Time Warner Ent. Co. v. FCC*, 93 F.3d 957, 965 (D.C. Cir. 1996) (discussing application of *TRAC* doctrine to facial constitutional challenges). Constitutional challenges (unlike "systemic" statutory challenges) sometimes raise unique considerations and benefit less from the agency expertise otherwise brought to bear.

The second step in the *Thunder Basin* analysis is also met: Plaintiffs' claims—that IHM and WHM are hemp, not marihuana, or that DEA otherwise lacks authority to regulate IHM and WHM—

---

[4] Congress authorized district court jurisdiction in specific contexts. *See, e.g.,* 21 U.S.C. § 824(d)(1) (jurisdiction to withdraw emergency suspension); *id.* § 843(f) (enforcement by Attorney General); *id.* § 856(e) (similar); *id.* § 882 (jurisdiction to enter injunction in suits brought by a state). District courts will also have jurisdiction in criminal proceedings that involve the CSA.

are precisely the types of claims ordinarily presented to the court of appeals.  Indeed, it is rare that a claim will not be "of the type" intended to be reviewed within the statutory structure: "Claims 'will be found to fall outside of the scope of a special statutory scheme in only limited circumstances, when (1) a finding of preclusion might foreclose all meaningful judicial review; (2) the claim[s] [are] wholly collateral to the statutory review provisions; and (3) the claims are beyond the expertise of the agency.'" *AFGE*, 929 F.3d at 755 (quoting *Arch Coal, Inc. v. Acosta*, 888 F.3d 493, 500 (D.C. Cir. 2018)).  These three considerations form "general guideposts," rather than "distinct inputs into a strict mathematical formula." *Jarkesy*, 803 F.3d at 17.  But none of the three supports an exception to the exclusive jurisdiction of the courts of appeals over Plaintiff's claims seeking equitable relief from any future final determination under the CSA.

The scheme provides for meaningful judicial review, in the courts of appeals.  This is so even if the statutory scheme Congress has established does not allow Plaintiffs "to obtain 'pre-implementation' review" of an agency's interpretation or "immediate relief barring all agencies from implementing" an interpretation.  *AFGE*, 929 F.3d at 755.  Indeed, meaningful judicial review is still available even if the statutory scheme "made it *impossible* to obtain particular forms of review or relief." *Id.* at 756.  Here, as in *AFGE* itself, Plaintiffs and their members can bring their claims through the administrative process "in the context of concrete . . . disputes." *Id.* at 757.  Nor does the scheme require Plaintiffs to "incur a sanction," Pls.' Opp'n at 22, or "bet the farm," *Free Enter.*, 561 U.S. at 490.  Plaintiffs do not need to take any potentially violative step, thus risking sanction, to invoke the review procedures: they can petition for rulemaking or seek registration under the CSA, for example. Or, they can pursue a challenge to the IFR.

For similar reasons, Plaintiffs' claim—that DEA lacks authority to regulate IHM and WHM— is not "wholly collateral" to the statutory review provisions.  Rather, that claim may arise in the context of a specific agency action, such as the IFR or a registration action, as set forth above. *See AFGE*, 929 F.3d at 759–60 ("This consideration is 'related' to whether 'meaningful judicial review' is available,

and the two considerations are sometimes analyzed together." (quoting *Jarkesy*, 803 F.3d at 22)). Plaintiffs' renewed focus on the absence of "ongoing" proceedings is out of place in a discussion of *Thunder Basin* which applies, after all, to pre-enforcement challenges. *See* Pls.' Opp'n at 23.

Last, the issues are well within the agency's expertise. First and foremost, whether IHM and WHM are controlled substances—whether they are marihuana—is the type of technical decision DEA routinely makes. *See, e.g., Doe,* 484 F.3d 561 (review of DEA determination that substances were Schedule I, not Schedule III). DEA also has ample familiarity with its own regulatory jurisdiction and enabling statutes. To be sure, DEA may have to engage in statutory interpretation, including of the AIA. But any eventual judicial review will nonetheless be aided by DEA's accumulated wisdom concerning the interaction of the CSA specifically with other statutes.

Again, the Court need not reach the more intricate questions concerning the application of *Thunder Basin* and *TRAC.* Plaintiffs' suit *is* a challenge to the IFR; § 877 requires that such challenges be brought in the Court of Appeals.

E. *Jurisdiction is not proper under* Leedom v. Kyne.

Plaintiffs acknowledge the narrowness of the *Kyne* doctrine. Defendants have demonstrated that Plaintiffs cannot satisfy the second *Kyne* requirement, that there be "no alternative procedure for review," or the third, that the agency "plainly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 508–10 (D.C. Cir. 2019) (quoting *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009)).

Plaintiffs can obtain review of their statutory claims through a challenge to the IFR or, if they prefer, some future final action, as § 877 provides. Plaintiffs insist that because their claim is that the CSA does not apply, they should not be forced to seek review through a process the CSA establishes. Pls.' Opp'n at 35. That argument does not answer the *Kyne* question, which is simply whether they

can obtain judicial review of their claim that the CSA does not apply.  If Plaintiffs are right in their reading of the statute, a court of appeals can vindicate their view.

Regulation of IHM and WHM by the DEA would not rise to the "extreme" level of misconduct required to trigger *Kyne*'s third element.  Plaintiffs do not dispute that DEA's understanding of the interplay between the definition of "hemp" and the definition of "marihuana," even if mistaken, would not be sufficient for them to invoke *Kyne* jurisdiction.  Pls.' Opp'n at 35. Instead, Plaintiffs contend that DEA has "violated the clear, mandatory, and specific prohibitions in 7 U.S.C. § 1639r."  Pls.' Opp'n at 35.  But as mentioned above, that provision is an express *grant* of authority to USDA.  The provision does not mention DEA at all; any "prohibition" it contains is neither "clear" nor "specific."

Indeed, although the Court need not definitively resolve the provision's meaning in this litigation, it seems quite likely that Plaintiffs vastly over-read that provision as prohibiting enforcement of generally applicable regulations to hemp production activities.  Plaintiffs contend that because the statute provides USDA with the "sole authority" to issue regulations "that relate to the production of hemp," and then also clarifies that it does not displace the FDA or HHS authority to also issue related regulations, DEA lacks any authority to regulate controlled substances used or created during the "production of hemp."  *See* Pls.' Opp'n at 12-13; FAC ¶¶ 63–64.  But that would prove far, far too much.  Section 1639r makes no mention of the Department of Labor, but it is unlikely Congress intended to displace, for example, regulations concerning overtime pay when it comes to the "production of hemp."  It makes no mention of OSHA, but it is doubtful that Plaintiffs and their members can operate their business without regard to workplace safety.  It makes no mention of the EPA, but it is doubtful that Plaintiffs are free to ignore pollution regulations.  It makes no mention of the IRS, but it is doubtful Plaintiffs' activities escape taxation.  Similarly, that § 1639r does not expressly mention DEA likely does not mean that generally applicable provisions of the CSA or generally applicable DEA regulations cease to operate in relation to hemp production.  But, at the

19

very least, DEA regulation of IHM and WHM is not so extreme as to warrant extra-statutory jurisdiction under *Kyne*.

## IV.   The Court should decline to exercise equitable jurisdiction regardless.

Without even resolving the jurisdictional questions above, this Court can and should dismiss Plaintiffs' claims in exercise of its discretion to decline equitable jurisdiction.  The most compelling reason to do so is to honor Congress's intent in channeling review of DEA's determinations to the courts of appeal.

Plaintiffs acknowledge that the first factor, whether a declaratory judgment would resolve the dispute is among the "most important considerations that may induce a court to deny declaratory relief."  Pls.' Opp'n at 42 (citation omitted).  But they fundamentally err in assessing that factor when they conclude it supports the exercise of jurisdiction.  Plaintiffs argue that "if this Court grants Plaintiffs' requested relief, Plaintiffs could move to dismiss their petition for review."  *Id.*  But this is doubly wrong: first, that they "could" dismiss their petition indicates that even if Plaintiffs prevail, a dispute may linger.  But, more important, in assessing this factor the Court cannot assume that Plaintiffs will prevail.  *Swish Mktg., Inc. v. FTC*, 669 F. Supp. 2d 72, 77 (D.D.C. 2009).  If Plaintiffs *lose* this case on the merits, it will not resolve Plaintiffs' pending petition for review because Plaintiffs make a procedural challenge to the IFR that will still need to be resolved.

And of course Plaintiffs cannot dispute that other remedies are available in the separate, pending proceedings before the D.C. Circuit.  They worry that an order vacating the IFR will not provide them sufficient certainty; but if Plaintiffs prevail in the petition for review on their view that DEA lacks jurisdiction to regulate IHM and WHM, then Plaintiffs will be armed with a D.C. Circuit decision and opinion saying just that.

Given the specific circumstances of this litigation and Congress's clear intent to channel challenges to DEA decisions to the courts of appeal, the Court should decline equitable jurisdiction.

**CONCLUSION**

For any of the many, independent reasons Defendants have identified, the Court should dismiss Plaintiffs' claims.


Dated: March 23, 2021                    Respectfully submitted,

                                         BRIAN M. BOYNTON
                                         Acting Assistant Attorney General

                                         BRIGHAM J. BOWEN
                                         Assistant Branch Director
                                         Federal Programs Branch

                                         /s/ *Michael F. Knapp*
                                         MICHAEL F. KNAPP (Cal. Bar No. 314104)
                                         Trial Attorney
                                         United States Department of Justice
                                         Civil Division, Federal Programs Branch
                                         1100 L Street NW
                                         Washington, DC 20005
                                         Phone: (202) 514-2071
                                         Fax: (202) 616-8470
                                         Email: michael.f.knapp@usdoj.gov

                                         *Counsel for Defendants*