UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

HEMP INDUSTRIES ASSOCIATION, *et al.*,

      Plaintiffs,

        v.

UNITED STATES DRUG ENFORCEMENT ADMINISTRATION, *et al.*,

      Defendants.

</td><td>

Civil Action No. 20-2921 (JEB)

</td></tr>
</table>

## MEMORANDUM OPINION

While the debate over marijuana legalization and enforcement consumes officials both in Washington and in various state capitals, this case focuses on its cousin: hemp. It principally involves a Drug Enforcement Administration rule issued in response to a recent round of statutory amendments to the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* As relevant here, the rule states that only hemp derivatives, extracts, and products exceeding 0.3% delta-9 tetrahydrocannabinol (THC) — the principal psychoactive component of the cannabis plant — shall be stringently regulated by the CSA. Plaintiffs seek a declaration that two necessary byproducts of the hemp-production process — specifically, intermediate hemp material (IHM) and waste hemp material (WHM), both of which unavoidably exceed 0.3% delta-9 THC — do not qualify as controlled substances subject to the CSA's registration requirements. They likewise pursue an injunction preventing DEA from enforcing the CSA against such material.

Interesting as this question may be, the Court ultimately concludes that it is powerless to entertain the merits of Plaintiffs' entreaty. Congress has provided an exclusive pathway for

1

federal-court challenges to final DEA decisions such as the Interim Final Rule at issue here: namely, a petition for review filed in the court of appeals.  See 21 U.S.C. § 877.  As this lawsuit, in sum and substance, challenges an assertion of agency authority set out in the IFR, it falls squarely within the ambit of that exclusive-review provision.  The Court, accordingly, will dismiss this action for lack of subject-matter jurisdiction.

## I.    Background

The Court begins with an overview of the relevant statutory and regulatory background, then offers a brief survey of the hemp-production process at the core of this suit, and concludes with a procedural history.

### A.  Legal Background

Passed in 1970 and enforced by DEA, the CSA creates a comprehensive regulatory regime that criminalizes the unauthorized manufacture, distribution, and dispensation of controlled substances.  See 21 U.S.C. §§ 822, 841(a); see also 28 C.F.R. § 0.100(b) (Attorney General delegating regulatory authority under CSA to DEA).  The CSA groups such substances into five "schedules" based on their potential for abuse, accepted medical uses, and accepted safety for use under medical supervision.  See 21 U.S.C. § 812(a)–(b); see also id. § 811(a) (empowering DEA to add or remove substances from schedules).  Substances in Schedule I — which have "no currently accepted medical use in treatment in the United States" — are subject to the most stringent controls.  Id. § 812(a)–(b).  For example, anyone who "manufactures," "distributes," or "dispenses" such a controlled substance is generally required to register with DEA.  Id. § 822(a); see also id. § 823(a) (listing factors to be considered when registering manufacturers of Schedule I substances).

Both marijuana and tetrahydrocannabinols are classified under Schedule I.  Id. § 812, Schedule I (c)(10), (17).  Although Congress has long regulated these substances (the former since 1937), the Agriculture Improvement Act of 2018 ushered in a new regulatory framework for the plant *Cannabis sativa L.* and its various derivatives that have lower concentrations of delta-9 THC (a specific type of tetrahydrocannabinol).  Specifically, the statute introduced a revised definition for "hemp":

> The term "hemp" means the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis.

7 U.S.C. § 1639*o*(1).  With that definition in tow, the AIA then amended the CSA in two relevant ways.  First, it clarified that "[t]he term [marijuana] does not include . . . hemp, as defined in [the AIA]."  21 U.S.C. § 802(16).  Second, it carved out from Schedule I "tetrahydrocannabinols in hemp (as defined under [the AIA])."  Id. § 812, Schedule I (c)(17). These changes thus exempted from the CSA's registration requirements the cultivation and processing of the cannabis plant under specified conditions.  The AIA further granted the Department of Agriculture — subject to several exceptions not immediately relevant — "sole authority to promulgate Federal regulations and guidelines that relate to the production of hemp." 7 U.S.C. § 1639r(b); see also id. § 1639*o*(3).  Notwithstanding that provision, the CSA continues to grant DEA general authority to promulgate and enforce regulations it deems necessary and appropriate to execute its functions under the CSA.  See 21 U.S.C. §§ 821, 871(b); see also 21 C.F.R. §§ 1300–1317.

Invoking those rulemaking powers, DEA on August 21, 2020, published an interim final rule intended to "conform[] [its] regulations" to the AIA's statutory amendments.  See

Implementation of the Agriculture Improvement Act of 2018, 85 Fed. Reg. 51,639, 51,639 (Aug. 21, 2020).  Notwithstanding its oxymoronic-sounding title, the IFR became effective and binding upon regulated parties on the date of its publication and thus constitutes final agency action.  Id. The rule altered the agency's Schedule I regulation to clarify that "[Marijuana] Extract" is limited to extracts "containing greater than 0.3% delta-9-[THC] on a dry weight basis," and that "Tetrahydrocannabinols" does not include "any material, compound, mixture, or preparation that falls within the [AIA's] definition of hemp."  Id. at 51,640; see also 21 C.F.R. § 1308.11(d)(31), (58).  The agency also specifically addressed products derived from hemp plants, stating that "[i]n order to meet the definition of 'hemp,' and thus qualify for the exemption from schedule I, the derivative must not exceed the 0.3% [delta-9]-THC limit."  85 Fed. Reg. at 51,641.  In other words, according to DEA, "a cannabis derivative, extract, or product that exceeds the 0.3% [delta-9]-THC limit is a schedule I controlled substance, even if the plant from which it was derived contained 0.3% or less [delta-9]-THC on a dry weight basis."  Id.; see also id. at 51,640–41 (similar).  This determination is at the core of Plaintiffs' challenge here.

Finally, the CSA provides for original jurisdiction in the courts of appeals over "[a]ll final determinations, findings, and conclusions" made by DEA under the statute.  See 21 U.S.C. § 877.  Any person "aggrieved by a final decision" may obtain review thereof by filing a petition in the relevant court of appeals within thirty days.  Id.

B.  Factual Background

These statutory and regulatory developments occurred amidst an American hemp economy witnessing rapid and substantial growth.  As of 2019, nearly 512,000 acres of land were licensed for hemp cultivation in the United States, and one survey the year after found more than 5,400 state-licensed hemp processors — both significant increases from years prior.  See

ECF No. 29 (Am. Compl.), ¶¶ 22, 26.  A wide array of hemp products, in turn, have flooded the consumer market; applications of the plant range from fabrics and textiles, to papermaking and oil absorbents, to foods and cosmetics, and beyond.  Id., ¶ 16.

Among the ingredients for each of these products are extracts derived from hemp plants. Id., ¶ 29.  In their final form, the extracts contain less than 0.3% delta-9 THC and are therefore not psychoactive or subject to the CSA.  Id., ¶¶ 15, 29.  The problem here for Plaintiffs lies in the hemp-extract production process.  As a high-level understanding of that process is necessary to grasp the substantive issues underlying this action, the Court — with useful assistance from Plaintiffs — will briefly outline its key stages.

The journey begins with the cultivation and harvest of hemp plants, which are soon transferred to third-party processors for "milling" and "extraction."  Id., ¶¶ 32–34.  Deploying a series of complex procedures, the processors separate the hemp flower from the remainder of the plant, extract cannabinoids from raw flower material (the remains of which are then discarded), and evaporate the resulting oil in order to remove extraneous solvents, fats, and lipids.  Id., ¶¶ 33–35.  Evaporation generates two outputs of particular relevance here: intermediate hemp material and waste hemp material.  Both substances "naturally (and unavoidably) exceed" 0.3% delta-9 THC concentration, as prior steps in the production process have stripped away the low-THC and THC-free parts of the hemp plant.  Id., ¶¶ 35–37; see also id., ¶¶ 35–36 (explaining that IHM and WHM "contain[] concentrated levels of cannabinoids").  According to Plaintiffs, however, neither IHM nor WHM is added to or otherwise used as an ingredient in any consumer product.  Id., ¶¶ 35–36.  IHM, rather, is further refined into extracts or isolates containing less than 0.3% delta-9 THC, which are in turn used as ingredients in such consumer products.  Id., ¶¶ 35, 38.  Plaintiffs do not discuss what processors or businesses do with WHM.

At bottom, then, certain in-process materials created in the course of hemp production "will inevitably exceed 0.3% [delta-9]-THC," even though both the initially harvested hemp plant and the ultimate output of the extraction process contain less than that concentration. Id., ¶¶ 38–39. Plaintiffs in this suit want this Court to approve that process, thereby alleviating their fear of criminal enforcement and obviating any need to obtain a Schedule I registration from DEA.

C. Procedural History

Plaintiffs here are the Hemp Industries Association and RE Botanicals, Inc. HIA, which represents the interests of American hemp companies and consumers, has more than a thousand business, farming, and individual members, roughly 300 of whom manufacture, process, or store IHM and WHM. Id., ¶ 11. RE Botanicals, meanwhile, is a private corporation that produces and markets hemp products (and thus handles the same two substances). Id., ¶ 12.

These two Plaintiffs first filed suit not in this district court, but rather upstairs in the D.C. Circuit. Displeased with DEA's August 2020 IFR — which, as previously noted, states that "a cannabis derivative, extract, or product that exceeds the 0.3% [delta-9]-THC limit is a schedule I controlled substance," even if the product is "derived from a [below-threshold] hemp plant," 85 Fed. Reg. at 51,641 — they lodged a petition for review of the rule in the court of appeals shortly after its promulgation. See Hemp Indus. Ass'n v. DEA, No. 20-1376 (D.C. Cir. Sept. 18, 2020); 21 U.S.C. § 877 (requiring parties seeking review of final DEA decision to file petition in court of appeals within thirty days). The petition attacked the IFR on both substantive and procedural grounds. See Petition for Review at 5 (D.C. Cir. Sept. 18, 2020).

Plaintiffs, as it turned out, were just getting started: less than a month later, they commenced a distinct action in this Court against DEA and its Acting Administrator. See ECF

No. 1 (Compl.).  Their initial Complaint requested several forms of declaratory relief relating to

positions assertedly adopted by DEA in the IFR with respect to IHM and WHM, as well as "an

injunction enjoining the IFR."  Id., ¶¶ 85–116.  Just eight days after lodging that pleading,

Plaintiffs moved to hold their D.C. Circuit case in abeyance "until an appealable decision is

reached in" these district-court proceedings.  See Petitioners' Motion to Hold in Abeyance at 1

(D.C. Cir. Oct. 20, 2020).  They explained that their district-court action sought "declaratory

relief that involves interpretation of the same hemp-related amendments that the IFR purports to

implement," and that such proceedings "may affect the outcome of" the D.C. Circuit case.  Id. at

3.  The court of appeals subsequently granted the motion.  See Clerk's Order (D.C. Cir. Oct. 21,

2020).

Additional proceedings in this Court ensued.  Prior to any response from the

Government, Plaintiffs filed a self-styled Emergency Motion for Expedited Discovery seeking an

order compelling DEA to answer two interrogatories aimed at ascertaining whether IHM and

WHM were controlled substances under the CSA.  See ECF No. 21 (Pl. Disc. Mot.) at 8.  The

Court denied that invitation, noting that "as best [it] can tell, no court has ever ordered this kind

of pre-Answer discovery against a federal agency."  ECF No. 24 (Disc. Op.) at 2.  In doing so,

the Court expressed its "present doubts" as to whether it even had subject-matter jurisdiction

over the lawsuit in light of Section 877's command that challenges to final DEA determinations

be brought in the courts of appeals.  Id. at 4–5.  It nonetheless elected to "await Defendants'

fuller briefing" before tackling this jurisdictional issue.  Id. (cleaned up) (citations omitted).

Such briefing has now arrived.  As anticipated, the Government soon filed a Motion to

Dismiss for lack of subject-matter jurisdiction, see ECF No. 26, which Plaintiffs countered with

an Amended Complaint.  The revised pleading seeks relief similar (but not identical) to its

predecessor — essentially, declaratory and injunctive relief preventing DEA from enforcing the CSA against the manufacture and possession of IHM and WHM.  See Am. Compl., ¶¶ 6, 105, 110.  It no longer, at least explicitly, seeks an injunction "enjoining the IFR" itself.  See Compl., ¶ 114.  Their earlier effort having been mooted, Defendants promptly renewed their bid for dismissal, see ECF No. 30 (Def. Mot.), which Plaintiffs opposed.  See ECF No. 33 (Pl. Opp.).  Plaintiffs have not moved for a temporary restraining order or a preliminary injunction.

## II.    Legal Standard

Defendants' Motion invokes the legal standard for dismissal under Rule 12(b)(1).  When a defendant brings a motion to dismiss under that Rule, the plaintiff must demonstrate that the court has subject-matter jurisdiction to hear his claims.  See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000).  "Because subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim," the court has "an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."  Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  "Absent subject matter jurisdiction over a case, the court must dismiss it."  Bell v. U.S. Dep't of Health & Human Servs., 67 F. Supp. 3d 320, 322 (D.D.C. 2014).

In policing its jurisdictional borders, the court must scrutinize the complaint, granting the plaintiff the benefit of all reasonable inferences that can be derived from the alleged facts.  See Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).  The court need not rely "on the complaint standing alone," however, but may also look to undisputed facts in the record or resolve disputed ones.  See Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992).  Nor need the court accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint or merely amount to legal conclusions.  See

Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).

**III.    Analysis**

The Court begins by explaining why 21 U.S.C. § 877, the CSA's exclusive-review provision, divests the Court of subject-matter jurisdiction over this action.  It then concludes with an examination of Plaintiffs' separate contention that jurisdiction is nonetheless proper under Leedom v. Kyne, 358 U.S. 184 (1958).

A.  Exclusive-Review Provision

"Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider."  Jarkesy v. SEC, 803 F.3d 9, 15 (D.C. Cir. 2015) (quoting Bowles v. Russell, 551 U.S. 205, 212 (2007)).  "Litigants generally may seek review of agency action in district court under any applicable jurisdictional grant."  Id.  Not so, however, when Congress has established a "special statutory review scheme."  Id.  In such circumstances, courts assume that "Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies."  Id. (quoting City of Rochester v. Bond, 603 F.2d 927, 931 (D.C. Cir. 1979)); accord Telecomms. Rsch. & Action Ctr. v. FCC, 750 F.2d 70, 77 (D.C. Cir. 1984) ("[A] statute which vests jurisdiction in a particular court cuts off original jurisdiction in other courts in all cases covered by that statute.").

The CSA contains such a statutory-review provision.  It states, in relevant part:

> All final determinations, findings, and conclusions of the Attorney General under this subchapter shall be final and conclusive decisions of the matters involved, except that any person aggrieved by a final decision of the Attorney General may obtain review of the decision in the United States Court of Appeals for the District of Columbia or for the circuit in which his principal place of business is located upon petition filed with the court and delivered to the Attorney General within thirty days after notice of the decision.

21 U.S.C. § 877; see 28 C.F.R. § 0.100(b) (Attorney General delegating regulatory authority under CSA to DEA).  The D.C. Circuit has confirmed that this provision "vests exclusive jurisdiction in the courts of appeals over '[a]ll final determinations, findings, and conclusions' of the DEA applying the CSA."  John Doe, Inc. v. DEA, 484 F.3d 561, 568 (D.C. Cir. 2007) (alteration in original).  In other words, Section 877 overrides the more general federal-question statute, see Ligon v. LaHood, 614 F.3d 150, 154–55 (5th Cir. 2010); Bold All. v. FERC, No. 17-1822, 2018 WL 4681004, at *4 (D.D.C. Sept. 28, 2018), and provides the "exclusive means of obtaining judicial review in those cases to which it applies."  Jarkesy, 803 F.3d at 15 (citation omitted); see also City of Tacoma v. Taxpayers of Tacoma, 357 U.S. 320, 336 (1958) (explaining that "all objections" to agency action encompassed by exclusive-review provision "must be made in the Court of Appeals or not at all").

Before considering the import of Section 877 for the present case, the Court finds it useful to review a key D.C. Circuit precedent on the provision's operation.  In John Doe, Inc., a plaintiff dissatisfied with DEA's denial of an importing permit brought suit in district court, arguing that the agency's determination was contrary to law and seeking an injunction requiring it to approve the application.  See 484 F.3d at 564; John Doe, Inc. v. Gonzalez, No. 06-966, 2006 WL 1805685, at *11 (D.D.C. June 29, 2006).  The Circuit affirmed the district court's dismissal for lack of subject-matter jurisdiction, holding that Section 877 assigned review of the plaintiff's claims regarding DEA's "final determination" exclusively to the court of appeals.  See 484 F.3d at 568–70.  As the district court explained, "[T]he CSA, pursuant to Section 877, provides one explicit avenue for judicial review — i.e., via petition to the applicable court of appeals — and nowhere does it contemplate that district courts should involve themselves in adjudicating CSA-based determinations by the DEA."  2006 WL 1805685, at *20.  While the court of appeals could

entertain a separate petition for review filed by the plaintiff contesting the permit denial, the district court lacked jurisdiction over the parallel lawsuit.  See 484 F.3d at 570.  The Circuit warned that adopting a "narrow interpretation of § 877" would "encourage[] forum shopping," cause "dissatisfied claimants to 'jump the gun' by going directly to the district court to develop their case instead of exhausting their administrative remedies before the agency," and lead to "duplicative and potentially conflicting review."  Id. at 570 (citation omitted).

Although John Doe, Inc. does not squarely control this case, for the reasons that follow, the Court concludes that — much as in that precedent — Plaintiffs here are effectively challenging a "final determination[]" or "conclusion[]" made by DEA — specifically, its August 2020 IFR.  See 21 U.S.C. § 877.  While they (no longer) seek formal invalidation of the rule in this lawsuit, they pursue declaratory and injunctive relief that would functionally nullify the precise position that they claim the agency has adopted in the IFR.  Because Plaintiffs may only "obtain review of [that] decision" in the court of appeals, this Court lacks jurisdiction to separately entertain their claims.  Id.; see also John Doe, Inc., 484 F.3d at 570.

As a preliminary matter, both parties appear to agree that the IFR — which, once again, became effective and binding on regulated parties upon its promulgation, see 85 Fed. Reg. at 51,639 — constitutes a "final decision" under Section 877.  The Government so maintains, see, e.g., Def. Mot. at 8–9; ECF No. 34 (Def. Reply) at 5, 14, and Plaintiffs never suggest otherwise. Indeed, their aforementioned petition for review challenging the IFR in the D.C. Circuit explicitly cites Section 877 as its jurisdictional basis.  See Petition for Review at 4 (D.C. Cir. Sept. 18, 2020).  The Court thus agrees that Section 877's threshold requirement is satisfied.  See Hemp Indus. Ass'n v. DEA, 357 F.3d 1012, 1014 (9th Cir. 2004) (noting court of appeals' jurisdiction over challenge to rule issued under CSA); Oregon v. Ashcroft, 368 F.3d 1118, 1120

(9th Cir. 2004) (same for interpretive rule), aff'd sub nom. Gonzales v. Oregon, 546 U.S. 243

(2006); Monson v. DEA, 589 F.3d 952, 960 (8th Cir. 2009) (noting that challenge to rule

promulgated under CSA must be filed in court of appeals); cf. O.A. v. Trump, 404 F. Supp. 3d

109, 132 n.8 (D.D.C. 2019) (finding that interim final rule was final agency action even though

agency had invited public comment on it); Mack Trucks, Inc. v. EPA, 682 F.3d 87, 95 (D.C. Cir.

2012) (reviewing and vacating interim final rule even though agency was "in the process of

promulgating a final rule" covering same issue).

     The question, then, becomes whether Plaintiffs' lawsuit challenges the IFR, such that

review thereof may only be had in the court of appeals per the plain terms of the CSA's

exclusive-review provision.  Three steps make clear that it does.

     Begin with what the IFR says.  As previously discussed, the IFR amends DEA's

regulatory definition of marijuana extract and tetrahydrocannabinols.  See 85 Fed. Reg. 51,645

(defining marijuana extract to include extracts "containing greater than 0.3 percent delta-9-

[THC] on a dry weight basis" and defining "Tetrahydrocannabinols" to exclude "any material,

compound, mixture, or preparation that falls within the [AIA's] definition of hemp") (citing 21

C.F.R. § 1308.11(d)(31)(ii), (58)).  It goes on to adopt the definitive position, as Plaintiffs relate

in their Amended Complaint, see Am. Compl., ¶ 83, that "the definition of hemp [in the AIA]

does not automatically exempt [from Schedule I] any product derived from a hemp plant,

regardless of the [delta-9]-THC content of the derivative" and that "a cannabis derivative,

extract, or product that exceeds the 0.3% [delta-9]-THC limit is a schedule I controlled

substance, even if the plant from which it was derived contained 0.3% or less [delta-9]-THC on a

dry weight basis."  85 Fed. Reg. at 51,641.  It further declares that "entities no longer require a

DEA registration or import and export permits to handle hemp extract that does not exceed the statutory 0.3% THC limit."  Id. at 51,644; see Am. Compl., ¶ 83.

Second, consider what Plaintiffs claim the IFR means.  At its core, they believe that the rule establishes that "the CSA's registration requirements do continue to apply to entities handling . . . IHM and WHM."  Am. Compl., ¶ 83.  In other words, Plaintiffs maintain, DEA "publicized its view" in the IFR that IHM and WHM "are Schedule I substances," thereby "assert[ing] its authority to impose criminal and/or civil liability against unregistered hemp processors who manufacture and/or process IHM and WHM."  Id., ¶ 3.  The IFR thus both "constitute[s] DEA's most direct claim that IHM and WHM are illegal," id., ¶ 84, and "confirms [the agency's] intent to regulate hemp production."  Id., ¶ 83; see also id., ¶¶ 100–01 (quoting IFR as evidence of DEA's position that IHM and WHM are not exempt from Schedule I); Pl. Disc. Mot. at 5 (arguing that IFR "effectively reschedules hemp derivatives and extracts" and "criminalize[s]" an "essential intermediate step in the production of hemp" products).

Finally — and this is the key point that closes the loop — the Court looks at Plaintiffs' position in this lawsuit and the relief they seek.  According to them, the DEA stance outlined above — i.e., its "asserti[on] [of] authority to regulate the hemp production process" — constitutes "an affront to Congress's clear command that possession and manufacture of IHM and WHM be permitted."  Id., ¶ 90.  Put differently, they argue that the very regulatory authority laid out in the IFR flouts the AIA.  Id., ¶¶ 87, 99–101; see id., ¶ 83 (contending that IFR "confirms DEA's intent to regulate hemp production in defiance of Congress's express mandate in the [AIA]").  For relief, they seek a declaration that — contrary to the IFR — "the definition of 'hemp' as set forth in [the AIA] includes IHM and WHM," or that the AIA "authorizes and/or immunizes the possession and manufacture of IHM and WHM" such that the substances need

not be registered under the CSA.  Id., ¶ 105.  Similarly, they pursue an injunction that — once again contrary to the IFR — would prevent "DEA from enforcing the CSA as to IHM and WHM."  Id., ¶ 110.

It is clear that such relief would have a singular effect: nullifying the unlawful assertion of agency authority that Plaintiffs insist the IFR sets forth.  Put simply, the Amended Complaint "specifically identifies the IFR as embodying what [Plaintiffs] contend is an incorrect interpretation of the relevant statutes and an unlawful assertion [of] regulatory authority.  They seek an injunction enjoining DEA from asserting that regulatory authority and a judicial declaration that their own, contrary interpretation is the correct one, and that they should be exempt from its application."  Def. Reply at 6–7.  It is thus difficult to see how this lawsuit — which arrived less than two months after the IFR's promulgation — is anything but a challenge to the IFR that falls within the "exclusive jurisdiction [of] the courts of appeals."  John Doe, Inc., 484 F.3d at 568 (citing 21 U.S.C. § 877).

To be sure, and as they repeatedly state, Plaintiffs do not in these proceedings seek a declaration that the IFR itself is invalid or an injunction directly enjoining its application.  They expressly sought the latter relief in their initial Complaint, see Compl., ¶ 114, a claim indistinguishable from the direct assault on the permit denial in John Doe, Inc. that the D.C. Circuit determined could only proceed in the court of appeals.  See 484 F.3d at 570.  But the fact that Plaintiffs' amended pleading attacks the very position that they claim DEA adopted in the IFR without explicitly seeking to invalidate or reverse the IFR itself by name does not make this suit any less of a challenge to the IFR or any less of an attempt to "obtain review of" the assertion of regulatory authority contained therein.  See 21 U.S.C. § 877.  Plaintiffs cannot avoid Section 877 by shrewdly styling their Amended Complaint as technically eschewing a formal

14

challenge to the IFR while functionally seeking a judicial pronouncement as to the validity of its substance.  They may not, in other words, "circumvent a congressional grant of exclusive jurisdiction" by "creatively framing their complaint."  Heller, Ehrman, White & MacAuliffe v. Babbitt, 992 F.2d 360, 363 (D.C. Cir. 1993).

Ample authority reinforces this commonsense result.  For instance, in FCC v. ITT World Communications, Inc., 466 U.S. 463 (1984), the Supreme Court held that a district court lacked jurisdiction to consider a claim raising the same substantive issues that were at stake in a final agency decision, review of which a statutory provision committed to the exclusive jurisdiction of the court of appeals.  The procedural posture was relatively straightforward.  First, the FCC denied the plaintiff's petition for rulemaking to curtail the agency's negotiations with foreign governments.  Id. at 465.  Having appealed that denial to the D.C. Circuit, the plaintiff simultaneously filed a lawsuit in the district court seeking to enjoin the agency from conducting the very same foreign negotiations.  Id. at 466, 468.  The Supreme Court determined that the district court lacked jurisdiction over such claim, remarking that "[l]itigants may not evade [exclusive-review] provisions by requesting the District Court to enjoin action that is the outcome of the agency's order."  Id. at 468–69.  The plaintiff could not file a complaint in the district court raising, "[i]n substance," the "same issues" and attempting "to enforce the same restrictions upon agency conduct as did the petition for rulemaking," review of which was only proper in the court of appeals.  Id.; see also Sandwich Isles Commc'ns, Inc. v. Nat'l Exch. Carrier Ass'n, 799 F. Supp. 2d 44, 49–50 (D.D.C. 2011) (similarly determining that court lacked jurisdiction to hear claim where plaintiffs "in essence . . . are seeking review of an FCC order" — notwithstanding their insistence that the "case does not amount to an effort to obtain judicial

review of" such order as a formal matter — because review of agency orders was committed to "exclusive jurisdiction" of court of appeals).

So too here: Plaintiffs may not "evade" Section 877 by filing a district-court action that, "[i]n substance," seeks review of the "same issues" that the IFR purportedly addresses, and that further seeks — much like their (presently pending) petition for review in the court of appeals — "to require [DEA] to conduct future [action] on the terms that [Plaintiffs] propose[]."  ITT World, 466 U.S. at 468 & n.5; see also Daniels v. Union Pac. R.R. Co., 530 F.3d 936, 942–43 (D.C. Cir. 2008) (holding that district court lacked subject-matter jurisdiction over claim that, in substance but not in name, challenged agency's interpretation of its regulations, thus rejecting attempt to "circumvent[] review of the [agency's] regulations in" court of appeals (as required by statute) "by instead indirectly . . . seeking review of the regulations in district court"); Bright v. Lehman, 725 F.2d 788, 790 (D.C. Cir. 1984) ("We will not allow [plaintiff] to circumvent the appeals procedure defined by Congress simply by casting a [different] label on his claim."); Durso v. Napolitano, 795 F. Supp. 2d 63, 69–71 (D.D.C. 2011) (concluding that district court lacked subject-matter jurisdiction over claim "inescapably intertwined" with review of final order subject to jurisdiction of court of appeals, even if claim did not "direct[ly]" challenge such order, and noting that plaintiffs may not "avoid[] special review statutes through creative pleading"); cf. John Doe, Inc., 2006 WL 1805685, at *21 ("[C]ourts have traditionally refused to allow litigants to circumvent clear statutory directives requiring direct petition to the courts of appeals.").

Consider for a moment the result if the opposite were true.  Litigants could routinely skirt Section 877's command that review of DEA's final decisions and determinations under the CSA be entrusted to the court of appeals simply by challenging the substance of such decisions and

determinations in the district court while refraining from seeking their invalidation or reversal as a formal legal matter.  The circumstances of John Doe, Inc., once again, offer a useful illustration.  While it is now clear that any lawsuit explicitly seeking reversal of DEA's denial of a permit application must proceed in the court of appeals, see 484 F.3d at 570, a future unsuccessful applicant might hope to avoid that exclusive-review bar by framing her complaint as seeking a broader judicial declaration that the chemical or activity at issue was somehow exempt from regulation (or that DEA otherwise lacked authority to act), as well as an injunction preventing DEA from enforcing the CSA against it.  See Def. Mot. at 11–12.  If such declaration or injunction were awarded, the permit denial — while formally unaffected — would effectively be rendered a nullity.

That state of affairs would make a mockery of congressional intent *vis-à-vis* Section 877. Yet, it is not meaningfully different from what Plaintiffs do here: in essence, ask the Court to endorse their own desired statutory interpretation — which just so happens to be the complete opposite of the position they claim DEA adopted in a promulgated rule — and to enjoin the agency from acting any differently.  See Pl. Opp. at 13 (arguing that AIA "displaces . . . DEA from regulating matters which 'relate to the production of hemp,' including the production of IHM and WHM") (quoting 7 U.S.C. § 1639r(b)).  The IFR would technically remain on the books, but this Court's action would in effect nullify the contested assertion of regulatory authority contained therein.

It matters not, accordingly, that Plaintiffs seek technically different "relief" in this Court — *i.e.*, a declaration and an injunction — than they "could obtain" upon a challenge to the IFR "in the D.C. Circuit."  Pl. Opp. at 17; cf. Durso, 795 F. Supp. 2d at 70–72 (explaining that plaintiffs could not bypass exclusive-review statute simply by seeking form of relief in district

court not available upon challenge to agency order in court of appeals); Amerijet Int'l, Inc. v. U.S. Dep't of Homeland Sec., 43 F. Supp. 3d 4, 15 (D.D.C. 2014) (similar); Sandwich Isles, 799 F. Supp. 2d at 50 (similar).  As the Government persuasively argues, it is difficult to see how DEA could "continue to apply," Am. Compl., ¶ 83, the CSA's registration requirements to IHM and WHM (per the position Plaintiffs identify in the IFR) in the face of the relief they pursue here (e.g., an injunction barring DEA from doing just that).  See Def. Reply at 7.  Indeed, Plaintiffs themselves have reported that they "may dismiss" their petition for review of the IFR in the D.C. Circuit if they obtain such relief in these proceedings.  See Pl. Opp. at 17; see also Pl. Disc. Mot. at 3 (explaining that requested relief before district court "would obviate the need to challenge the IFR").  Such admission only reinforces that they seek, "[a]s a practical matter," Pl. Opp. at 17, functionally the same relief here — namely, rejection of the IFR's assertion of regulatory authority with respect to entities handling IHM and WHM, see Am. Compl., ¶ 83 — as does their direct challenge to the IFR in the court of appeals.

        District courts in analogous circumstances have refused to bite on comparable bait offered by similar plaintiffs, dismissing for lack of subject-matter jurisdiction claims that, in substance, sought review of a DEA determination committed to the exclusive jurisdiction of the court of appeals.  Those dismissals occurred regardless of the technical nature of the relief requested.  See, e.g., Olsen v. Holder, 610 F. Supp. 2d 985, 993–95 (S.D. Iowa 2009) (dismissing claim seeking declaration that DEA improperly classified marijuana as Schedule I controlled substance, and concluding that "the present lawsuit amounts to nothing more than an attempt to circumvent the clear Congressional intent to have scheduling determinations . . . subject to review only by the Courts of Appeals"); Nation v. Trump, 395 F. Supp. 3d 1271, 1276–78 (N.D. Cal. 2019), aff'd, 818 F. App'x 678 (9th Cir. 2020) (dismissing claims that "relie[d] on the

18

premise that marijuana is improperly classified as a Schedule I drug," even though plaintiff

disclaimed any challenge to "the scheduling of marijuana in the CSA"). These cases, while not

controlling, reinforce the result the Court reaches here.

At bottom, the Court does not believe that Section 877 — to say nothing of the

comparable statutory provisions providing for direct review of decisions made by other agencies

under different legislation — can be so easily evaded. Nor will it endorse a mechanism that,

upon replication by other savvy plaintiffs, could defeat the purpose of Congress's exclusive-

review provision. See Def. Reply at 8 ("[Section] 877 would be a dead letter if a plaintiff could

simply seek a declaration that DEA erred rather than challenging the supposed error itself.");

John Doe, Inc., 2006 WL 1805685, at *21 (declining to adopt plaintiff's argument that "would

support a loophole around [*sic*] the common Section 877 jurisdiction held by the courts of

appeals"); cf. DCH Reg'l Med. Ctr. v. Azar, 925 F.3d 503, 506, 508 (D.C. Cir. 2019) (rejecting

jurisdictional argument that would enable plaintiffs to avoid statutory bar on judicial review

simply by "recasting" their claims). That is especially so when the inevitable consequence of

such a regime would be the precise ills the D.C. Circuit warned that courts should construe

Section 877 to avoid — to wit, "forum shopping" and "duplicative and potentially conflicting

review." John Doe, Inc., 484 F.3d at 570 (citation omitted) (warning against adopting "narrow

interpretation of § 877"); cf. Ukiah Adventist Hosp. v. FTC, 981 F.2d 543, 551 (D.C. Cir. 1992)

(rejecting plaintiff's argument for jurisdiction where it "would invite an endless stream of suits

filed in district courts . . . by parties seeking to stall or foreclose agency action"); City of

Rochester, 603 F.2d at 936 (observing that "[t]he rationale for statutory review is that coherence

and economy are best served if all suits pertaining to designated agency decisions are segregated

in particular courts" and raising concerns regarding potential "duplication and inconsistency").

Resisting the conclusion that their suit challenges the IFR and thus falls within the sweep of Section 877, Plaintiffs point to DEA's statement therein that the rule "merely conforms [the agency's] regulations to the statutory amendments to the CSA that have already taken effect, and it does not add additional requirements to the regulations." Pl. Opp. at 15 (quoting 85 Fed. Reg. at 51,639). The Court fails to see how this approach advances the ball. Regardless of how DEA styles its rule, and regardless of whether DEA claims that it "set[s] out any [agency] 'policy,'" id., Plaintiffs themselves have repeatedly maintained that the IFR embodies a specific assertion of regulatory authority that flouts the commands of Congress.

Briefly: their Amended Complaint insists that the IFR confirms that "the CSA's registration requirements do continue to apply to entities handling . . . IHM and WHM." Am. Compl., ¶ 83. They likewise argue that the IFR "effectively reschedules hemp derivatives and extracts" and "criminalize[s]" an "essential intermediate step in the production of hemp" products. See Pl. Disc. Mot. at 5; see also supra at 13 (recounting other statements). Similarly telling are a pair of letters from federal lawmakers quoted in the Amended Complaint. See Am. Compl., ¶¶ 88–89. One, from two Senators, asserts that "the IFR criminalizes the intermediate steps of hemp processing," thereby "rewrit[ing] the [AIA]" and "do[ing] significantly more" than "merely implement[ing] the [statute]." ECF No. 33-2 (Declaration of David Kramer), Exh. F (Wyden & Merkley Ltr.) at 1. The other, from nine Representatives, recites the IFR's text and states that it "seems to have ignored the clear legislative intent of the [AIA] in making the processing of hemp into extracts, derivatives, and cannabinoids subject to DEA enforcement as a violation of the [CSA]." Id., Exh. N (House Ltr.) at 1. No matter what the Government says about the IFR, then, Plaintiffs' own materials belie their Opposition's latest attempt to cast this lawsuit as anything other than a collateral attack on the substance of a DEA decision.

Finally, none of Plaintiffs' cited cases suggests that dismissing this action for lack of subject-matter jurisdiction is an improper result.  Although they reference several decisions that exercised jurisdiction over claims seeking declaratory or injunctive relief relating to the CSA, they offer no case (either under the CSA or a comparable regime) in which a court entertained a request for such relief where — as here — the very issue to be reviewed was set forth in a final decision subject to a statutory provision committing review thereof to the court of appeals.

Take Monson v. DEA, 589 F.3d 952 (8th Cir. 2009), the case to which Plaintiffs devote the most attention.  See Pl. Opp. at 27–31.  There, the Eighth Circuit held that Section 877 did not strip the district court of jurisdiction over a claim seeking a declaration that industrial hemp cultivated under state licenses was not "marijuana" under the meaning of the CSA.  Id. at 955–56, 960.  Of critical importance to that jurisdictional ruling, however, was the fact that "there was no final decision of the DEA under the CSA at issue."  Id. at 960; see also id. at 961 (reiterating that "[t]here was no final decision of the DEA to be reviewed"); id. at 960 (citing district-court cases that involved no "final decision under the CSA").  As the court explained, "Explicit in [Section 877's] grant of jurisdiction to the court of appeals is the requirement that the DEA issue a 'final decision' under the Act."  Id. at 960.  Because the plaintiffs' lawsuit did not "challenge" any such decision, jurisdiction in the district court was proper.  Id.  The court even distinguished John Doe, Inc. on this very basis.  See id. at 961 ("Unlike the applicant in John Doe, Inc., . . . [plaintiffs] did not file their complaint in the District Court seeking review of a final action by the DEA under the CSA.").

Monson, accordingly, is silent on what happens in a case like this one, where Plaintiffs seek a judicial pronouncement as to the validity of a substantive position adopted by DEA in a rule qualifying as a "final decision" under the CSA.  See 21 U.S.C. § 877.  If anything, the pains

the court took to emphasize that "there was no final decision of the DEA under the CSA at issue," Monson, 589 F.3d at 960–61, might be read to suggest that the Eighth Circuit would reach the same result in the present case as does this Court.  All Plaintiffs muster in response is the assertion that attempting to distinguish Monson based on the presence of a final DEA decision in this case "fails because Plaintiffs cannot obtain the relief they seek [here] through judicial review of the IFR."  Pl. Opp. at 31.  As the Court has already explained, however, that argument is a nonstarter.  See *supra* at 14, 17–18.

Plaintiffs' other citations founder for the same reason: none involved a DEA final decision on the precise substantive matter pressed by the litigants.  See, e.g., Novelty Distributors, Inc. v. Leonhart, 562 F. Supp. 2d 20, 26 (D.D.C. 2008) (exercising jurisdiction where both parties agreed that the relevant agency action was not a "'final determination, finding, or conclusion' under the CSA") (cleaned up) (quoting 21 U.S.C. § 877).  Several of Plaintiffs' proffered decisions, moreover, carry even less persuasive weight for additional reasons.  One — N.H. Hemp Council, Inc. v. Marshall, 203 F.3d 1 (1st Cir. 2000) — did not consider the issue of jurisdiction, and "it is well settled that cases in which jurisdiction is assumed *sub silentio* are not binding authority for the proposition that jurisdiction exists."  John Doe, Inc., 484 F.3d at 569 n.5 (quoting Ticor Title Ins. Co. v. FTC, 814 F.2d 731, 749 (D.C. Cir. 1987) (opinion of Williams, J.)).  Another, still, did not even mention, let alone grapple with, Section 877.  See Menominee Indian Tribe of Wisc. v. DEA, 190 F. Supp. 3d 843 (E.D. Wisc. 2016).  Finally, the fact that the Government may "seek and obtain declaratory judgments under the CSA" against private entities, see Pl. Opp. at 33 (citing, e.g., United States v. Safehouse, 408 F. Supp. 3d 583 (E.D. Pa. 2019)), and may bring suit in the district court "to enjoin violations of"

the CSA, see 21 U.S.C. § 882, has no bearing upon the preclusive effect of Section 877 when private litigants initiate an action that falls squarely in its teeth.

* * *

It is important to clarify what this decision does not mean. The Court does not conclude that "any challenge, without qualification," touching on "any issue related to DEA" comes within the scope of Section 877 such that a district court may not entertain it. See Pl. Opp. at 19 (internal quotation marks omitted). Nor does it find that Section 877 "necessarily vests exclusive jurisdiction [in the] courts of appeals over any and all enforcement actions" under the CSA. Id. at 21. Its holding, rather, is far more modest — namely, that when the substance of a lawsuit challenges an assertion of agency authority set forth in a DEA rule committed to the exclusive review of the court of appeals by statute, such lawsuit falls within the ambit of that exclusive-review provision. In the precise circumstance of the present case, permitting Plaintiffs to proceed in this district court would endorse an impermissible end run around Section 877.

That narrow disposition resolves this case. The Court, accordingly, has no occasion to reach any of the Government's alternative arguments for why subject-matter jurisdiction is wanting here, including its contentions that Plaintiffs lack standing and that their claims are not ripe. Nor does it offer any opinion on the underlying merits of Plaintiffs' claims regarding IHM and WHM.

B.  Leedom Jurisdiction

Plaintiffs have one final arrow in their quiver. They claim that, even if the Court lacks statutory jurisdiction over their case, it may nonetheless exercise jurisdiction under the doctrine of Leedom v. Kyne, 358 U.S. 184 (1958). See Am. Compl., ¶ 10; Pl. Opp. at 33–36. That doctrine — to the extent it remains viable today, see DCH Reg'l, 925 F.3d at 509 (suggesting

otherwise) — "permits, in certain limited circumstances, judicial review of agency action for alleged statutory violations even when a statute precludes review." Nyunt v. Chairman, Broad. Bd. of Governors, 589 F.3d 445, 449 (D.C. Cir. 2009).

Plaintiffs, to their credit, appear to recognize the long odds of this jurisdictional bid. They concede that Leedom jurisdiction is "exceptional" and "highly disfavored," Pl. Opp. at 33–34, and they acknowledge the D.C. Circuit's guidance that invocation of the "extremely narrow" doctrine is "extraordinary." Id. (quoting Nat'l Air Traffic Controllers Ass'n AFL-CIO v. Fed. Serv. Impasses Panel, 437 F.3d 1256, 1263 (D.C. Cir. 2006)). They nonetheless toss up this "Hail Mary pass," Nyunt, 589 F.3d at 449, and urge the Court to retain jurisdiction under Leedom. Like most such last-second heaves, however, this one falls harmlessly to the turf.

To the extent its prior musings throughout this Opinion were belabored, the Court handles the present contretemps with dispatch. The Leedom doctrine applies only when three requirements are met: "(i) the statutory preclusion of review is implied rather than express; (ii) there is no alternative procedure for review of the statutory claim; and (iii) the agency plainly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." DCH Reg'l, 925 F.3d at 509 (quoting Nyunt, 589 F.3d at 449) (cleaned up). Even under Plaintiffs' theory of the case wherein they do not challenge the IFR — a framing the Court has already rejected — they plainly cannot make this showing.

As an initial matter, Plaintiffs may obtain review of the precise statutory claim they bring here via a petition for review in the court of appeals (either now or upon some future DEA final determination). See Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc., 502 U.S. 32, 43–44 (1991); Ukiah, 981 F.2d at 550. Furthermore, they have not demonstrated that DEA committed an error "so extreme that one may view it as jurisdictional or nearly so," as required

under the third prong.  <u>Nyunt</u>, 589 F.3d at 449 (quoting <u>Griffith v. FLRA</u>, 842 F.2d 487, 493

(D.C. Cir. 1988)).  Even assuming the agency "misinterpreted or otherwise evaded its statutory

[authority]" with respect to the hemp-production process *vis-à-vis* substances qualifying as

legalized "hemp" as opposed to scheduled "marijuana," its action does not seem "the kind of

'extreme' error that would justify reliance on the <u>Leedom v. Kyne</u> exception."  <u>Id.</u>  Nor have

Plaintiffs thus far alleged an "obvious violation of a clear statutory command" with respect to

their related argument that DEA has disregarded the AIA's express grant of regulatory authority

to USDA in 7 U.S.C. § 1639r.  <u>See</u> <u>DCH Reg'l</u>, 925 F.3d at 509.

## IV.   Conclusion

For the aforementioned reasons, the Court will grant Defendants' Motion to Dismiss for

lack of subject-matter jurisdiction.  A separate Order so stating will issue this day.


/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  <u>May 3, 2021</u>